Mullen *v.* Mullen, Appellant.

Argued September 28, 1934.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*William T. Connor,* and with him *John R. K. Scott,* for appellant.

*Jacob Boonin,* for appellee.

Opinion by Keller, J., December 18, 1934:

This was an action of divorce brought by a husband against his wife, on the ground of indignities to the person such as to render his condition intolerable and life burdensome. The master, to whom the case was referred, recommended a decree in the libellant's favor; and the court below, after a full review of the evidence, granted the divorce.

The evidence produced on behalf of the libellant was, if believed, sufficient to warrant a decree in his favor. It showed a course of conduct on the part of the respondent manifesting a settled hatred of, and estrangement from, the libellant, consisting of constant quarreling, abusive language, calling him lazy and indolent, unreasoning jealousy, unfounded accusations of misconduct with his patients—the libellant is a physician—continuous reproaches concerning his running around with other women, made to third persons as well as himself, and wholly without foundation, charges that he had young girls running to his office, intimations to others that he had a venereal disease, frequent attempts to humiliate and embarrass him in his practice, culminating in a deliberate attempt, persisted in for six weeks, to harass and injure him as much as possible in his livelihood and profession, the details of which are hereinafter described at length.

Most of these accusations were categorically denied by the respondent, but after answering 'I did not,' to almost every charge of her husband, as repeated by her counsel, she herself later on in her testimony corroborated the libellant in some important respects. She admitted charging him with being intimate with the Bright girl (p. 226); her jealousy was apparent in her talk with Mrs. Bright, the girl's mother, as testified to by her on p. 211; she admitted telling a neighbor that her husband was starving her to death

(p. 211); she told people of her husband 'grafting his meals' from her family (pp. 223, 224).

The libellant was corroborated in many particulars by Mrs. Chandler, the wife of the doctor, whose practice the libellant bought, (paying for it in instalments of $100 a month), and in whose house the libellant and respondent lived in an apartment on the third floor during the period covered by the testimony. They were married on January 7, 1920. A month or so later they moved to the Chandler apartment at 1750 Park Avenue, where they continued to live together until September, 1921, when the libellant moved his belongings to a room on the first floor, near the doctor's offices, while the respondent continued to live by herself in the apartment on the third floor until November 28, 1921, when she left and moved to a house on Clearfield Street owned by the libellant but occupied by her family. They have no children.

Mrs. Chandler was a wholly disinterested witness, who gave a dispassionate account of the family life of the Mullens, as observable by her, and corroborated many of the more serious charges made by the libellant against his wife.

The culmination of these indignities is well described by the learned President Judge of the court below, as follows: "While she was barricaded in her third story room, she daily lowered a basket or some such receptacle from the front third story window to her brothers [or her cousin or a friend, Mrs. Johnston] standing below on the street who filled it with food, and she then drew it up to her window. This extraordinary scene took place daily, and of course always attracted a crowd. With ingenious malice she selected as the time for this performance her husband's office hours when he was receiving patients. This went on for six weeks. Of course it was all unnecessary and mere wicked, malicious stage play. She

could have gotten her food by the simple process of going out for it to the shops or to her father's house, or by having it brought up to her room. She was in no fear of force. She was never attacked. She was in fact armed with the only revolver in the house. And of course she could have gone out to make her purchases at any time her husband was away from the home. The plan adopted was ingeniously cruel, when it is remembered that her husband was building up his practice and engaged in an effort to buy out Dr. Chandler's ...... If the facts we have been considering depend for their proof upon conflicting testimony, there is one fact that does not. The respondent admits the six weeks' episode of the lowering of the basket for food. It was of course impossible to deny an act that the whole neighborhood saw. This was a gross and cruel indignity. It was as if she said to all her neighbors, 'See, my husband has locked me up and is starving me. He gives me no food and will let nobody in to bring it to me.' *It was pregnant with proof of all other relatively minor indignities disclosed by the evidence."*

On full consideration of all the evidence, we agree with the learned court below that the libellant is entitled to a decree. In our opinion his right to a divorce is clearly established by the credible testimony in the case.

The decree is affirmed at the costs of the appellant.