## Urffer, Appellant, *v.* Urffer.

Argued September 27, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Ruby R. Vale*, with him *Graham C. Woodward*, for appellant.

*Milton C. Sharp*, for appellee.

OPINION BY HIRT, J., January 27, 1944:

The libel in this action charged cruel and barbarous treatment, and indignities. The master found the latter charge sustained by the evidence and recommended a decree of divorce on that ground. The lower court concluded that the testimony of libellant and respondent were in balance; that both were to blame (as in *Nagin v. Nagin*, 146 Pa. Superior Ct. 198, 22 A. 2d 78) and dismissed the libel on the ground that libellant had not met the burden of proof by clear and satisfactory evidence. The record in this case is formidable and in the three volumes of testimony the issue is beclouded by much that is trivial and irrelevant. But it does not necessarily follow from respondent's denials or from her counter testimony charging libellant with indignities, that he has not met the burden upon him. There remains the controlling question of the credibility of the witnesses and the weight of their testimony. This case more nearly resembles *Zonies v. Zonies*, 151 Pa. Superior Ct. 317, 30 A. 2d 193. We think libellant is entitled to a divorce.

The marriage was contracted in 1912. In reading the testimony the surprise is not that the parties separated in 1940 but that they did not separate at least ten years earlier. There was no semblance of normal family life. The household was frequently in an uproar. There was no bond of affection, sympathy or tolerance between the parties. Respondent had developed a hatred not only

for libellant but for their daughter, an only child. Regardless of who was to blame, the condition of all of them was intolerable.

Libellant's salary was adequate and he gave respondent his monthly check; money matters are not involved. Libellant testified to acts of physical violence; that on two occasions respondent threatened him with a knife; and, on another threw a pan of hot water at him; they occupied separate bedrooms for the last 16 years without sexual relations; that she failed to perform necessary household tasks; that she continually refused to wash his handkerchiefs and socks "because they were too dirty" and over a period of 10 years had prepared his breakfast only twice; she frequently failed to provide an evening meal; that she "had the weakness of heavy drinking" and at times drank to excess; that she went out alone two or three nights a week returning early in the morning and refused to tell where she had been; that she would "do anything to gain her own end" and once broke libellant's glasses because she wanted to use the automobile although libellant needed it in his business; that she deliberately broke furniture in a fit of rage; without provocation she frequently vilified libellant and used profane language in the presence of their daughter and others; disturbances caused by her in the household at times required the intervention of the police; she was interested in other men, who frequently called the house on the telephone, and particularly a Mr. Richards, whom she "ran around with" for nine years; that she went on trips with Richards and, on returning home, would hide her traveling bag in the shrubbery; that she was always irritable, quarrelsome, and at times hysterical. Libellant in 1940 had a serious coronary disturbance. He attributed it to the tension of his home life. He testified that respondent was attentive during the critical stage but ignored him during convalescence when he still needed care. Libel-

lant was corroborated in some particulars by nine disinterested witnesses and generally by the daughter. We attach importance to the testimony of the daughter. The attitude of respondent toward her was unnatural. The daughter is a normal person who in disgust had lost respect for her mother because of her conduct. She left home just before the separation of the parties according to her intention to leave when she became of age. The immediate cause of her leaving was her mother's threat to beat her.

Respondent's testimony is a general denial of each of the indignities charged by libellant or an attempt to explain them away. Her testimony is contradictory, evasive and, on the whole, incredible. Some of her explanations are plausible but we cannot accept her testimony in essential respects and will not refer to it in detail. She is corroborated in material respects only by her mother who at her first appearance could remember nothing of importance but whose memory became acute during a recess between hearings. We do not consider the mother's testimony important. Respondent on her own testimony never had herself in hand. She was irascible, unstable and easily upset. The first 100 pages of her testimony is a recital of alleged misconduct of libellant toward her prior to the period of the indignities charged by the husband. She was induced to meet the specific charges of libellant only at the insistence of the master. It is significant that in her counter charges of indignities she placed the emphasis on her emotional reaction to them rather than on the severity of the acts themselves. Some of the charges against libellant are important, if true, but by her own testimony on many occasions she was in despair over trifles. Throughout the hearings she displayed an intolerant and belligerent attitude. She interrupted the proceedings many times when the testimony was against her, in spite of the threat of the

master to exclude her from the room if she did not restrain herself. Her excuse for this conduct was menopausal disturbance, which began not earlier than 1940 according to the testimony of her physician. It is significant however, under any fair reading of the testimony, that her behavior in the home was of the same pattern as her conduct before the master. There is no evidence that any of the acts complained of were involuntary or beyond her control relieving her from responsibility on that ground. *Duchossois v. Duchossois*, 139 Pa. Superior Ct. 1, 10 A. 2d 824.

Libellant was not entirely blameless but he is not barred on that account (*Breene v. Breene,* 76 Pa. Superior Ct. 568) since, as we view the testimony, the indignities complained of, were not provoked by him. *Gitlin v. Gitlin,* 143 Pa. Superior Ct. 93, 17 A. 2d 685.

Order reversed and a decree of divorce a.v.m. is ordered.