## McKrell, Appellant, *v.* McKrell.

Argued April 25, 1944. Before KELLER, P. J., BALD-RIGE, HIRT, KENWORTHEY and RENO, JJ. (RHODES and JAMES, JJ., absent).

*Ellsworth Jordan,* with him *James C. Tallant,* for appellant.

*William T. Corbett,* for appellee.

OPINION BY KENWORTHEY, J., July 15, 1944:

This is an action by the husband for divorce on the ground of indignities. The lower court, sitting without a jury, dismissed the libel.

The parties were married in 1925 and at the time of the hearing in 1943 had three children ranging in ages from eight to sixteen. Libellant is a doctor of chiropractics and a naturopathic physician, with offices within walking distance from his home in Bellevue, Allegheny County. The marriage was apparently successful until 1942, when libellant engaged as his professional assistant a young married woman whose husband was in the armed services and who was preparing herself for the practice of chiropractics. Judge SMITH summarized the evidence as follows: "He testified that his wife objected to the girl's presence, 'falsely charging him with infidelity with her; complained about his be-

ing at the office late hours in the evening with her after patients had left; objected to his walking home with her; complained about his having been with his office assistant in a taxicab and at meetings over town, and deliberately refused to believe or accept as true his explanation that their being together was strictly in line with their mutual professional interests, and while in attendance at meetings at one of the schools devoted to the study of the fields in which they were active practitioners. He further testified that on at least one occasion, his wife came to the office, left a note in his assistant's desk berating her; ...... that his wife told other persons of her suspicions concerning his conduct, and when confronted by persons with stories concerning her husband's association with his assistant, his wife accepted the stories without any attempt to express her faith in the doctor's loyalty to his marriage vows or family. All of this course of conduct, the doctor says was practically continuous and resulted in the disruption of the marital relation until he was denied access to the respondent's bed. He bitterly complained that his wife made no attempt to understand the responsibilities of his new position; to appreciate his professional outlook on life or to accept as unimpeachable his denial of any misconduct. Even his attendance at lodge meetings 'with the boys' she would not accept as a true explanation of his absence from home on those particular occasions.

"...... libellant himself further testified that his assistant, thoroughly competent and efficient, did work with him many evenings in the office after patients had gone; that this work was necessary to bring the records up-to-date each day, and that though sometimes this work lasted until after mid-night, it was all in the line of professional duty; that he did almost daily walk home with his assistant because he passed her house on the way home, and knowing himself guiltless, saw

no reason why he should not walk the public streets with her; that he was seen with her in a taxi-cab, one or two occasions, but that in each of these events they were returning from or going to a meeting of a professional group engaged in the field in which they practiced or were studying; that he was informed of his wife's note left in the desk of the secretary; that he read and resented this fact as he resented her conversation over the 'phone with his assistant, in which his wife admitted using some profanity and threats of legal action; that the assistant is still employed and associated with him, and that he saw no reason to discontinue that relationship since such conduct would unfairly reflect blame on his assistant where none was merited ...... The respondent did admit a deep-seated suspicion concerning her husband's conduct with his assistant and disbelief growing rapidly in her mind concerning his infidelity, and the impatience which on at least one occasion had resulted into open conflict between her and the office assistant. She quite evidently believed that her husband had made a choice and could thereafter be counted upon to side with the office assistant against her in all matters."

It is apparent to anyone who has read this record that both parties were telling the truth. Respondent admitted that she is now satisfied her accusations of infidelity were false and her suspicions groundless. Her conduct, if without sufficient provocation, clearly warrants a decree: *DiStefano v. DiStefano,* 152 Pa. Superior Ct. 115, 31 A. (2d) 357; *Zonies v. Zonies,* 151 Pa. Superior Ct. 317, 30 A. (2d) 193.

The nub of the case is whether the indignities were so provoked by libellant as to remove him from the category of "injured and innocent spouse" within the meaning of our divorce law. See *Urffer v. Urffer,* 154 Pa. Superior Ct. 379, 35 A. (2d) 580; *Gitlin v. Gitlin,* 143 Pa. Superior Ct. 93, 17 A. (2d) 685. And upon

this narrow issue we reach the opposite conclusion from that reached by the court below.

This case bears a marked similarity to *Andrew v. Andrew*, 121 Pa. Superior Ct. 152, 182 A. 706. As we there pointed out a wife is entitled to a reasonable explanation for her husband's frequent associations with another woman. But we think she was given one; in spite of it she persisted in the commission of indignities. We live in a modern world in which women increasingly are engaged in business and the professions in pursuit of which men must associate with them. And, "even a jealous woman owes to her husband a duty not to misinterpret circumstances or incidents unless she is willing to bear the consequences": *Andrew v. Andrew*, supra.

The order dismissing the libel is reversed and the record returned with the direction that a decree of absolute divorce be entered, costs to be paid by appellee.