## Barber v. Barber, Appellant.

Argued October 24, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Albert G. Liddell, Jr.,* with him *Liddell & Liddell,* for appellant.

*James Milholland,* with him *Alter, Wright & Barron,* for appellee.

OPINION BY BALDRIGE, J., December 13, 1944:

The husband in this divorce action alleged the wife was guilty of cruel and barbarous treatment and indignities. The learned court below, after hearing the testimony, concluded that he was entitled to a divorce on both grounds. This appeal followed the entry of its decree.

Our independent examination of the testimony convinces us that the libellant clearly established his right to a divorce for indignities, but that he failed to prove cruel and barbarous treatment which endangered his

life. He is a local manager at Pittsburgh for the Gamewell Company, and is 57 years of age; his wife is two years younger. They were married in 1931 and lived together until 1943 when she left Pittsburgh and returned to Philadelphia, her original home. No children were born to this union. The first difference apparently arose in 1933. The wife at that time became jealous, suspicious that her husband was guilty of immoral conduct and for the next 10 years she persistently and almost continuously humiliated and insulted him with unproven and unfounded charges of improper relations with secretaries in his office, and with being infatuated with her married sister. She complained not only to him, but to others, of his being a sexual pervert. She frequently visited his office where accusations against him were made loudly in the presence of employes. On one of the visits she produced a tear gas gun and threatened the entire office force with it. In an endeavor to placate her, several efficient employes were discharged.

We said, speaking through Judge KENWORTHEY, in *McKrell v. McKrell*, 155 Pa. Superior Ct. 297, 38 A. 2d 507: "We live in a modern world in which women increasingly are engaged in business and the professions in pursuit of which men must associate with them. And 'even a jealous woman owes to her husband a duty not to misinterpret circumstances or incidents unless she is willing to bear the consequences.'" See, also, *Andrew v. Andrew*, 121 Pa. Superior Ct. 152, 182 A. 706; *Wick v. Wick*, 155 Pa. Superior Ct. 528, 534, 39 A. 2d 304.

She admittedly wrote to the home office of the Gamewell Company criticising the conditions that prevailed in the Pittsburgh office. At times she became enraged and hysterical, made physical attacks upon her husband and charged him with having syphilis and insisted upon having his blood examined. He yielded

to this request to satisfy her. The doctor's certificate showed a negative result. She wrote a series of notes or letters, which reveal her obsessions and confirm the testimony of the libellant and others respecting her repeated charges against him. In one of the notes to him she wrote: "I always called you Hitler, but I guess you belong to Japan ...... consult a doctor or a mental doctor ......" In another one, left in the garage where she had put some of his clothes, after locking him out of the house, she asked him to see a "Sycoanalyst (sic) or go to work for Government." In letters written to the libellant's sister, Mrs. Foster, we have taken a few excerpts: "Now Anne it is time you cooperate with me before there is a penal offense against him ...... There is something rotten in Pgh. office and Byron is possessed with it ...... Best thing could happen to Byron is to be *fired* ...... I asked him to 'put cards on table and come clean' and our home will never be harmonious until he does. I know what he has been and is doing but he will have to confess or I cannot respect him ...... For your information Byron is definitely out of this home until he puts in writing a confession of his outside life in the past few years ...... I have told him many times to lay his cards on the table and confess ......" In a letter to Mrs. James Barber, her sister-in-law, March 15, 1943, she wrote: "I find I have stronger competition and it does not always have to be a woman ...... Byron should never have married, he is not satisfied with a wife ......"

Other evidence shows that she persistently insisted upon her husband's confessing to her of sexual offenses of which she imagined he was guilty. Her sister's husband, who impressed us as being eminently fair, and other disinterested witnesses, testified to her continual nagging and upbraiding her husband, and of making various accusations against him. Nothing appears in

this record that warranted her contemptible charges or irrational insinuations.

It is unnecessary to go further into details of the unfortunate situation that prevailed in this home. The unproven accusations of immorality and depraved conduct undoubtedly embarrassed and mortified libellant in the conduct of his business and made his home life intolerable. He clearly made out a case of indignities. See *Zonies v. Zonies*, 151 Pa. Superior Ct. 317, 30 A. 2d 193; *Di Stefano v. Di Stefano*, 152 Pa. Superior Ct. 115, 31 A. 2d 357.

The respondent denied part of the libellant's testimony, but important portions of it she admitted, including accusing him of being a "pansy". She attempted to excuse her conduct on the ground that he was an indifferent husband, physically attacked her on different occasions, and that his actions warranted the suspicions she entertained. We have carefully considered her testimony, but do not give credence to many of her statements. We concur in the view expressed by the court below that the husband is a respectable man whose marital misfortunes are principally due to a suspicious wife.

The decree of the court below granting a divorce on the ground of indignities is affirmed; that portion of the decree granting a divorce on the ground of cruel and barbarous treatment is reversed.