Klimkosky *v.* Klimkosky, Appellant.

Argued April 14, 1950. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross and Arnold, JJ.

*John H. Bigelow,* for appellant.

*Pauline G. Evansha,* for appellee.

OPINION BY HIRT, J., July 20, 1950:

The parties in this action for divorce were married in the City of New York in June 1938. The plaintiff then was 20 years of age; the defendant was 37. He then worked as a dishwasher in a restaurant; she was employed as a manicurist in a barber shop and occasionally as a model. Although plaintiff later secured somewhat better employment, both parties of necessity pooled their earnings to pay the rent of a single room in New York and other living costs. They moved to Hazleton in October 1940 into rooms in the attic of the third floor of a building owned by Andrew Pelechaz, defendant's father, for which they paid rent of but $3 per month. In 1941 plaintiff secured employment as a miner, and since then he has earned an annual income of about $3,000. He did not, however, set up a home elsewhere until 1944 when he rented rooms on Church Street in Hazleton. The parties have no children. In February 1945 the plaintiff left the defendant in their common abode because, as he alleged, of continuous arguments, alleged acts of violence on her part and accusations charging him with improper relations with other women. Giving due weight to the report of the master, we are still unable to agree with some of his findings or with his conclusions which were adopted by the lower court in granting the divorce. We are all of the opinion that the decree must be reversed.

There were frequent quarrels and some acts of violence on both sides. Plaintiff admits striking defendant on a number of occasions and she at times scratched his face or threw things at him. Their language too was not always above reproach but we must not be astute to judge them other than by their own standards. In

these respects the parties were nearly equally at fault and as to these charges we must leave them where they put themselves. *Daly v. Daly,* 137 Pa. Superior Ct. 403, 9 A. 2d 192; *Harding v. Harding,* 156 Pa. Superior Ct. 438, 40 A. 2d 869. Defendant's father conducted a tavern on the first floor of the building where the parties lived in Hazleton after their return from New York. We may ignore the complaint that the defendant was too much interested in the stock market. The entire testimony of her holdings is that she never owned more stock than three shares of General Motors. Plaintiff said that on one occasion in her father's tavern, the defendant invited a man to her bedroom; he produced a man who testified to language from her which he construed as an invitation. It is too much of a strain on credulity to believe that an invitation of such nature was made by this wife in the presence of her husband and of her father and mother. It is admitted that they were all there and heard the conversation. Moreover, there is no credible evidence even tending to indicate that defendant was actually immoral. The rooms in the attic occupied by the parties, at best were makeshift living quarters. There were no conveniences. It was not unnatural for her to spend her leisure evenings in her father's tavern on the floor below in the company of her family and those whom she found there. She drank only occasionally and not to excess. Plaintiff testified that on three or four occasions defendant permitted men in the tavern to touch her person. She denies it. But if her presence there posed a serious behavior problem, plaintiff could have removed the temptation by setting up a home elsewhere. This he did not do but continued to live with his wife in the house of her father for three and one-half years. A husband who willingly exposes his wife to the attentions of men in a tavern must accept responsibility for the consequences. *Goshorn v. Goshorn,* 163 Pa. Superior Ct. 621, 63 A. 2d 135.

Plaintiff was frequently accused of improper conduct with women and we have no doubt that these charges were a source of dissension between them, but it is equally clear that this wife had good reason to believe in the infidelity of her husband. In 1939 she spent two weeks away from her husband, with her parents in Hazleton. When she returned unexpectedly to New York she found several discarded contraceptive devices in the waste basket of their bedroom which had been occupied by her husband in her absence. Plaintiff admits that she found them and he did not even attempt to explain how they got there. He was interested in a woman entertainer by the name of Stevens and admitted visiting her and going to her room occasionally of an "afternoon". He was seen in her apartment a number of times. According to defendant he admitted having relations with her. For a few months in 1943 he lived apart from his wife in a rented room in Hazleton. Mrs. Markle the owner of the property testified that plaintiff brought the Stevens woman to the house with him on two occasions and asked if he could take the lady upstairs. Permission was denied. He was interested also in a Ramsay woman who lived in Harrisburg. In his contacts with her he went by the name of Mondell. His wife's suspicions as to this woman were aroused when she found a post office receipt for a $20 money order which he had sent her. There were other women in whom plaintiff displayed interest which, in each instance, aroused well-founded suspicions in the mind of the defendant of improper relations. Under the circumstances of this case, the evidence that the defendant accused her husband of infidelity, furnishes no support to the charge of indignities, even as to those occasions when there was no foundation in fact for them. Cf. *Parcella v. Parcella,* 165 Pa. Superior Ct. 218, 67 A. 2d 576; *Sieno v. Sieno,* 163 Pa. Superior Ct. 479, 61 A. 2d 778.

Plaintiff says that the final separation from his wife occurred in 1945. But both admit that he came back to her thereafter for marital relations. She said his visits for this purpose continued into 1947; he said they ended in 1946. But on the testimony of either, the date of the separation was extended beyond 1945. The resumption of marital relations after the alleged indignities is not a bar to a divorce on the theory of condonation, but it is a factor to be considered in determining whether the alleged acts of mistreatment really amounted to indignities making this husband's condition intolerable. Cf. *Nixon v. Nixon,* 329 Pa. 256, 198 A. 154; *Harding v. Harding,* supra. We are convinced that they did not.

Plaintiff not only has failed to establish his right to a divorce by clear and satisfactory evidence, but in any view he was not an injured and innocent spouse. Cf. *Daly v. Daly,* supra.

Decree reversed and complaint dismissed at plaintiff's costs.