## Turner *v.* Turner, Appellant.

Argued March 26, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*William W. McAdams,* for appellant.

*Louis M. Cohen,* with him *Morris Wolf,* and *Wolf, Block, Schorr and Solis-Cohen,* for appellee.

OPINION BY GUNTHER, J., July 17, 1952:

This divorce action was instituted by the husband on the ground of indignities. The Master recommended that a divorce be denied. The court below sustained plaintiff's exceptions to the Master's report and entered a decree, from which the wife has appealed.

The parties were married in 1927 and remained happily married for about twenty years. Plaintiff, who is 44 years of age, left defendant, who is 50 years of age, in July, 1950. Shortly thereafter, he filed his complaint in divorce.

We have examined the voluminous (740 pages) testimony with painstaking care and conclude that the evidence clearly establishes that defendant was guilty of a course of conduct sufficient to make out a case of indignities. For a period of approximately two and one-half years, plaintiff was subjected to continual and prolonged emotional outbursts in which he was falsely accused of adultery and was called a host of opprobrious and disgusting names. During this period defendant constantly ridiculed plaintiff's many religious and social activities and accused him of engaging therein for immoral purposes. Toward the end she embarked upon a malicious attempt to discredit him in the eyes of his friends and business associates, by writing many scurrilous and profane letters and by badgering him and his employes in such a manner as to interfere seriously with his business. His employer testified that plaintiff would have been taken into the stock brokerage firm as a full partner had his work not seriously deteriorated during the period in question and had he not become so nervous and unstable. While constantly accusing him of infidelity in her frequent hysterical outbursts, she persisted in entertaining other

men in her apartment in a manner and under conditions which, while not conducive to an inference of infidelity on her part, were clearly of the sort designed to make a normal husband's life intolerable and life burdensome.

The court below very accurately analyzed large portions of the acrimonious testimony when it said: "Protests by the plaintiff about the defendant's gambling and extravagance, and complaints that she was unduly familiar with other men were not met by denials but with counter charges of infidelity. The record will support an inference that the defendant deliberately set herself the task of interfering with her husband's business and making his social life intolerable. She followed her verbal with written accusations. The letters she wrote him are not only vulgar and disgusting but profane, indecent and blasphemous. They declare in terms her loathing and ineradicable hatred; her joy that he has brought an action in divorce and her pious hope that it will be granted so that she can start life anew with someone else who is worthier of her."

Although plaintiff set forth additional charges of indignities, those described above clearly warranted a divorce. "Continuous unfounded accusations of infidelity when accompanied, as here, by other degrading or humiliating conduct persisted in sufficiently long is enough to make out a case of indignities." *Horton v. Horton,* 170 Pa. Superior Ct. 209, 85 A. 2d 602; *Silfies v. Silfies,* 168 Pa. Superior Ct. 421, 79 A. 2d 130; *Wilson v. Wilson,* 163 Pa. Superior Ct. 546, 63 A. 2d 104; *Barber v. Barber,* 156 Pa. Superior Ct. 241, 40 A. 2d 120; *Phipps v. Phipps,* 368 Pa. 291, 81 A. 2d 523.

The pivotal issue is whether plaintiff is the innocent and injured spouse. "Indignities are not grounds for divorce where they are provoked by the complaining party, provided the retaliation is not excessive." *Wil-*

*son v. Wilson,* supra; *Philo v. Philo,* 154 Pa. Superior Ct. 563, 36 A. 2d 833. A careful examination of the record leads us to the inescapable conclusion that plaintiff's conduct was devoid of such improprieties as to justify defendant's intolerable conduct. Defendant's consistent false accusations of adultery were vigorously denied by plaintiff and are unsupported by defendant's evidence. The most that can be inferred from the sketchy evidence of defendant's witnesses is that plaintiff was occasionally guilty of some slight improprieties while under the influence of alcohol. That defendant did not learn of some of these improprieties until long after she had begun her tirades on his infidelity is indicative of the insincerity of defendant. Her primary charge of adultery was directed to plaintiff's alleged association with a woman whom he met for only a few days at a religious conference in Virginia. Plaintiff gave a perfectly reasonable and credible explanation of this instance, both to defendant at the time, and to the Master, but it nevertheless formed one of the bases for defendant's series of profane and disgusting letters which were admitted into evidence.

Defendant contends that her behavior was provoked on many occasions by plaintiff's frequent inebriety. Plaintiff admitted that he drank on occasions to excess, but claimed that this was made necessary as an escape from his wife's neurotic outbursts. Defendant's argument utterly fails to persuade for an examination of the testimony of disinterested witnesses establishes that plaintiff became, while under the influence, the "life of the party", always remained friendly, never became abusive, and, finally, that defendant willingly continued to live with plaintiff despite his excessive drinking and contended that she loved him very much throughout most of the period in question.

For reasons that we fail to understand, the Master concluded that both the plaintiff and defendant were

credible witnesses. We are not inclined to so charitably appraise defendant's testimony which, on close examination, discloses many contradictions and inconsistencies, while plaintiff's testimony appears to us quite straightforward and reasonable, as evidenced by his willing admission of his own weaknesses. The written proof of her frequent assertions of intense hatred of her husband is directly inconsistent with her professions of a great love for him. It is clear beyond peradventure that defendant was an abnormally jealous and neurotic person whose unfounded suspicions and false accusations caused her to embark upon a course of conduct which was most intolerable. ". . . even a jealous woman owes to her husband a duty not to misinterpret circumstances or incidents unless she is willing to bear the consequences." *Andrew v. Andrew,* 121 Pa. Superior Ct. 152, 182 A. 706. Her contempt and ridicule of his religious activities and her blasphemous profanity must clearly have grievously wounded the sensibility of a man who was engaged in a great many philanthropic activities and who appears to have been sincerely interested in the religious work he had undertaken.

We find no reasonable excuses or provocation for defendant's violent and often disgusting hysterical outbursts and accusations. Plaintiff appears to have acted as a normal, reasonable and loving husband should. What slight improprieties he may have committed could not possibly form the basis for retaliation of this kind. The charge of indignities and that plaintiff was an innocent and injured spouse are established by clear and satisfactory evidence.

Decree affirmed.