## Oliver, Appellant, *v.* Oliver.

Argued October 7, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Harry Goldbacher,* for appellant.

*William N. Nitzberg,* for appellee.

OPINION BY ROSS, J., January 20, 1953:

The essential question presented by this appeal is whether the plaintiff husband in this divorce action has sustained the burden of proving that he is the "injured and innocent spouse" within the meaning of our Divorce Law of May 2, 1929, P. L. 1237, sec. 10, 23 PS sec. 10, as amended.

George Y. Oliver in his complaint alleged that his wife, over a period of years beginning about 1928, had subjected him to indignities to the person and cruel and barbarous treatment. The master who heard the case recommended that the divorce be refused and, after exceptions to the master's report were dismissed by the court below, plaintiff appealed to this Court.

The parties, both natives of Philadelphia and both approximately 46 years old, were married on November 7, 1927, and have resided at various addresses in that city ever since. They have no children. They are presently living in the home at 4947 Walnut Street which they own by the entireties, but occupy separate

quarters therein, marital relations having ceased early in 1948.

The charge of cruel and barbarous treatment is refuted by the physical facts. Cruel and barbarous treatment consists of actual personal violence or a reasonable apprehension thereof, or such course of treatment as endangers life or health and renders cohabitation unsafe. *Campbell v. Campbell,* 129 Pa. Superior Ct. 106, 194 A. 760; *Edelman v. Edelman,* 165 Pa. Superior Ct. 485, 69 A. 2d 165. Clearly, if plaintiff feared for his physical safety at the hands of defendant he would not now be sharing the common home with her. We, therefore, confine our consideration of the case solely to the charge of indignities.

Testimony as to the indignities complained of, which allegedly extended over a period of 20 years, was elicited at four separate hearings and covers 370 pages of typewritten testimony. The master made no affirmative finding as to credibility but has furnished us with a thorough and comprehensive analysis of the various incidents, the existence of which is established but as to which the versions of the parties are, for the most part, diametrically opposed. We are aided also in our study of this mass of charges and counter-charges by the able opinion of the learned court below.

Plaintiff charged his wife, inter alia, with accusing him unjustly of improper conduct with other women, with sex perversion with certain named male friends of his, with immoral conduct on her part with other men, with neglecting him and their home in order to care for members of her immediate family, with directing abusive and profane language at him, with physical violence toward him and his property, and with other conduct from which he contended settled hate and estrangement toward him could be deduced. He complained that she gave away his pet dog and furni-

ture which he had been collecting for a den; that she broke 70 or more of his victrola records on three different occasions; that she, in the presence of others, unjustly accused him of trying to kill her when he came to the hospital to see her after she had sustained injuries in a fall over his radio cabinet; that she cashed bonds belonging to both of them and put the money into her own account and has never given him an accounting; that her abuse led to a nervous collapse on his part, from which he has since recovered. He was corroborated in part—as to abusive language and suspicious conduct on the part of defendant with other men—by his sister-in-law, Laura Oliver.

Defendant either denied the charges or explained them away. She admitted the use of vulgar language when angry and the accusations of infidelity but cited instances to show that plaintiff had provoked them. She testified, for example, that one night when she returned to the living room after having prepared a snack for the parties and their guests in the kitchen she found plaintiff with a woman guest sitting in the dark, that they sprang to their feet immediately and offered as an excuse that the light plug had been pulled out; that he took a named waitress at Linton's horseback riding; that he would go out for a newspaper at night and a girl at the store would be waiting for him and that he would not return for several hours; that she found semen in his handerchief; that he left on a vacation trip to Massachusetts without inviting her to accompany him and left no money to provide for her in the meantime; that their furniture had been repossessed for failure of plaintiff to pay for it, and dwelt at length with the situation of "the girl next door".

The latter incident concerned a woman, approximately of the age of the parties, who was physically

handicapped and spent most of her time in a wheelchair. The parties were on friendly terms with her and defendant, whose mother had been incapacitated by an injury, suggested that plaintiff administer massages to the woman. He did so, at first only to the neck. Later when he massaged the woman's entire body, defendant protested because she noticed that he became quite excited and that it seemed to have an exhilirating effect on the woman. Defendant testified that she had seen plaintiff kiss the woman, and that he began to curse her (the defendant) only after the start of the massage treatments. There was testimony by defendant's witnesses that plaintiff had been seen leaving the house next door at 2 a.m., two hours after the house had been darkened, and then taking an indirect route to his home.

There was evidence also to the effect that defendant's brothers, who took their meals with the parties, contributed proportionately to the family expenses and shared their ration coupons with them; that plaintiff never asked for an accounting of the household finances, and that she made no wrongful expenditures.

Indignities must consist of a course of conduct on the part of defendant. That conduct must have rendered the condition of the plaintiff intolerable and life burdensome; and there must be evidence from which an inference of settled hate and estrangement may be deduced. *Davidsen v. Davidsen,* 127 Pa. Superior Ct. 138, 191 A. 619; *McLaughlin v. McLaughlin,* 170 Pa. Superior Ct. 516, 87 A. 2d 101. It is obvious from the state of the record before us, that our determination of this appeal—whether plaintiff has sustained his burden of proving the requisite course of conduct on the part of defendant—must depend in large measure on credibility of the parties and their witnesses. The master decided the issue in favor of defendant. While

we are not bound by his conclusions as to credibility, his judgment upon that vital factor is entitled to the fullest consideration, as he has had the opportunity, not accorded to us, to observe the demeanor and appearance of the witnesses, which in many instances become "the very touchstone of credibility". *Smith v. Smith,* 157 Pa. Superior Ct. 582, 43 A. 2d 371; *McMahon v. McMahon,* 167 Pa. Superior Ct. 51, 74 A. 2d 718; *Wiggins v. Wiggins,* 171 Pa. Superior Ct. 298, 90 A. 2d 275.

The master stated: "The plaintiff has categorically denied any misconduct affording adequate provocation for any of these outbursts on the part of the defendant, but has not recounted in detail a single instance in which defendant made serious accusations against him without at least some appearance of factual basis therefor." The principle is well established that continuous unfounded accusations of infidelity when accompanied by other degrading or humiliating conduct persisted in for a sufficient length of time make out a case of indignities (*Turner v. Turner,* 171 Pa. Superior Ct. 519, 89 A. 2d 893; *Horton v. Horton,* 170 Pa. Superior Ct. 209, 85 A. 2d 602), but it is equally true that when the accusing spouse so conducts himself with other women that the wife has just reason to be suspicious, her accusations furnish no support to the charge of indignities to the person. *Parcella v. Parcella,* 165 Pa. Superior Ct. 218, 67 A. 2d 576; *Klimkosky v. Klimkosky,* 167 Pa. Superior Ct. 116, 74 A. 2d 497; *Cunningham v. Cunningham,* 171 Pa. Superior Ct. 577, 91 A. 2d 301.

Our independent examination of the record confirms the master's conclusions both as to credibility and provocation.

The late distinguished President Judge KELLER, in *Daly v. Daly,* 137 Pa. Superior Ct. 403, 404, 405, 9 A.

2d 192, has set forth the rule by which we are governed in reaching our decision in cases of this nature: ". . . in weighing the evidence relating to the libellant's right to a divorce, the court should not enter a decree based on merely a slight preponderance of the evidence, but should refuse the divorce unless the libellant establishes by clear and satisfactory proof (1) . . . such a course of indignities to the person as rendered his condition intolerable and life burdensome; and (2) that the libellant was the injured and innocent spouse. . . . where both parties are nearly equally at fault, so that neither can clearly be said to be 'the injured and innocent spouse,' the law will grant a divorce to neither, but will leave them where they put themselves; and if the alleged indignities were provoked by the complaining party, they are not grounds for divorce, 'unless when the retaliation is excessive' . . . and that means, established to be excessive by clear and satisfactory evidence." See also *Holt v. Holt,* 170 Pa. Superior Ct. 547, 87 A. 2d 790, and *Blose v. Blose,* 163 Pa. Superior Ct. 322, 61 A. 2d 370. Judged by this standard, plaintiff has not only not made out a case of indignities by "clear and satisfactory proof" but he has failed to qualify as the injured and innocent spouse.

Undoubtedly this has been an unhappy marriage but that fact of itself—absent proof of grounds as outlined by our statute—furnishes no basis for the granting of a divorce. *Hartley v. Hartley,* 154 Pa. Superior Ct. 176, 35 A. 2d 591; *McLaughlin v. McLaughlin,* supra, 170 Pa. Superior Ct. 516, 87 A. 2d 101.

Order dismissing the complaint affirmed.