Baxter, Appellant, v. Baxter.

Argued December 17, 1959. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

reargument refused April 20, 1960.

*Robert F. Jackson,* for appellant.

*Francis R. Lord,* for appellee.

OPINION BY WRIGHT, J., March 24, 1960:

On July 18, 1958, James F. Baxter, Jr. filed a complaint in divorce against his wife, Helen M. Racine Baxter, on the grounds of cruel and barbarous treatment and indignities to the person. After the determination of rules for a bill of particulars, and for alimony pendente lite and counsel fees, the case was pro-

ceeded with before a master. On April 30, 1959, the master filed a report recommending that the complaint be dismissed, to which report the husband filed exceptions. On June 17, 1959, the court en banc dismissed the husband's exceptions, and entered a final decree refusing the divorce. The husband has appealed. The factual situation appears in the following excerpt from the opinion of President Judge SWENEY:

"Plaintiff was born in Media, Pennsylvania, on May 17, 1927; defendant was born in Philadelphia, Pennsylvania, on November 1, 1933; the parties were married at the Media Presbyterian Church on November 9, 1957, after a brief courtship; after a honeymoon in New York, they returned on November 16th, 1957, to the home of the plaintiff's family at 315 South Monroe Street, Media, Pa., where they lived in a third floor bedroom, with the right to use the parents' kitchen and living room, until about April 1, 1958, when, after a reconciliation, they moved to a third floor apartment at No. 42 East Second Street, Media, Pa. Here the parties lived until July of 1958, when plaintiff left defendant and went back to live with his parents. On July 17, 1958, defendant moved from the apartment and went to live at No. 243 Barrington Road, Upper Darby, Pennsylvania, where she had resided before her marriage. The defendant worked at the Media Branch of Provident Tradesmen's Bank during the months of February, March and April of 1958. There were no children born of this marriage . . .

"A thorough examination of the record shows that plaintiff complains, as indignities, that defendant refused to prepare breakfast, that defendant hid in the cellar, that defendant objected and used vile language when plaintiff corrected her table manners, that defendant kept plaintiff up late at night, that defendant got plaintiff out of bed late at night to go out, that defendant objected to Christmas and used vile language

about it, that defendant did not follow the directions of the doctor in treating an acne condition, that defendant refused to limit herself to four cups of coffee a day, that defendant told plaintiff he was a 'mama's boy' and ought to go sleep with his mother, that defendant was a poor housekeeper, did not do the washing and ironing, the apartment was untidy, that defendant's hair was unkempt, her clothes were not suitable, she did not get her teeth fixed, she threw away her diamond ring, that defendant threw dishes, silver, pots and pans at him, threw a blanket out the window in a rage, made a scene at the Penn Fruit Market over the cashing of a check; that defendant destroyed technical data and magazines belonging to plaintiff and on several occasions hid plaintiff's automobile . . .

"Under the heading of cruel and barbarous treatment, plaintiff testifies that on three occasions the defendant attacked him with knives. The first time he was lying on the sofa and she came at him with a large butcher knife. He got away and was not cut. Defendant denies that such an event took place. Another time plaintiff says defendant came at him with a knife, he grabbed a pillow to defend himself and the defendant stabbed twice into the pillow. The pillow was not in evidence but the pillow slip was and showed two cut marks. Defendant states she never stabbed at plaintiff and the cuts in the pillow slips were due to her careless cutting of material for a dress, which she laid out on the bed".

The master took the position that appellant "maintained a rigid standard which defendant could not possibly follow", and that appellant "provoked every bit of the response that he got". The court below was of the opinion that appellant had not met the required burden of proof, that there was "no corroboration of his testimony and the defendant categorically denies his charges", and that appellant was not an innocent

and injured spouse. Appellant's contention is that he proved both indignities and cruel and barbarous treatment, and that his testimony was not shaken by his wife's denials and explanations.

This appeal does not involve any unusual legal questions. The applicable principles are well settled and have been frequently restated. The interest of the Commonwealth in the preservation of the marriage status makes it an interested third party in every divorce proceeding: *Matovcik v. Matovcik*, 173 Pa. Superior Ct. 267, 98 A. 2d 238. A decree of divorce must be founded upon compelling reasons and upon evidence that is clear and convincing: *Wasson v. Wasson*, 176 Pa. Superior Ct. 534, 108 A. 2d 836. A decree will not be granted upon the plaintiff's uncorroborated testimony if it is contradicted and shaken by that of the defendant: *Hansell v. Hansell*, 182 Pa. Superior Ct. 158, 126 A. 2d 509. Conduct provoked by the plaintiff is not ground for divorce unless the retaliation is excessive: *Rankin v. Rankin*, 181 Pa. Superior Ct. 414, 124 A. 2d 639. It is incumbent upon the plaintiff to show clearly and indubitably his status as the injured and innocent spouse: *Barnes v. Barnes*, 181 Pa. Superior Ct. 427, 124 A. 2d 646.

Counsel for appellant contends that appellant must be considered an innocent and injured spouse because the evidence does not establish that he was guilty of conduct which would have entitled the defendant to a divorce, quoting language from the opinion of this court in *Rech v. Rech*, 176 Pa. Superior Ct. 401, 107 A. 2d 601. However, the *Rech* case was explained and distinguished in *Berezin v. Berezin*, 186 Pa. Superior Ct. 340, 142 A. 2d 741, wherein we reaffirmed "the established principle that conduct on the part of a plaintiff falling short of grounds for divorce may be asserted as a defense by one charged with indignities to

the person, but that such rule is not applied in adultery cases".

What has already been said applies with equal force, both to the charge of indignities and to the charge of cruel and barbarous treatment. In the latter regard, doubt is cast upon appellant's testimony by the fact that he continued to co-habit with his wife, notwithstanding her alleged propensity to attack him with a knife. If appellant actually feared that his life was endangered by his wife's conduct, it is not likely that he would have remained in the common home. See *Oliver v. Oliver,* 172 Pa. Superior Ct. 600, 94 A. 2d 124; *Hurley v. Hurley,* 180 Pa. Superior Ct. 364, 119 A. 2d 634.

The duty of the appellate court is to make an independent investigation of the evidence in order to determine whether in truth it establishes a legal cause for divorce: *Jablonski v. Jablonski,* 188 Pa. Superior Ct. 337, 146 A. 2d 813; affirmed 397 Pa. 452, 155 A. 2d 614. Our review of this voluminous original record discloses that appellant was unduly critical of his wife's cooking, her table manners, her style of dress, and her housekeeping, and that he constantly subjected her to ridicule and embarrassment. The retaliation which he may have received was fully deserved. We are clearly of the opinion that the case was properly decided in the court below. Cf. *Ghent v. Ghent,* 191 Pa. Superior Ct. 432, 156 A. 2d 354.

Decree affirmed.

———

DISSENTING OPINION BY WOODSIDE, J.:

I would reverse and grant the divorce. The evidence, even as stated by the court below and quoted in the majority opinion, requires the granting of a divorce in my opinion.

WATKINS, J., joins in this dissent.