Evans *v.* Evans, Appellant.

Argued March 2, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Leon M. Levy,* with him *Everett A. Rosser,* for appellant.

*Alfred E. Swoyer,* with him *Harry A. Kolb,* for appellee.

OPINION BY STADTFELD, J., April 21, 1943:

In this action of divorce the husband charged his wife with cruel and barbarous treatment and indignities to the person, such as to render his condition intolerable and life burdensome. The case was heard by Judge EAGEN without a jury. The charge of cruel and barbarous treatment was not pressed or considered. The court below granted a divorce on the ground of indignities alone, and from that decree this appeal was taken by the respondent wife.

In *Walker v. Walker*, 109 Pa. Superior Ct. 539, 167 A. 446, this court said, p. 541: "In the absence of a jury trial, we are required to consider all evidence and express an independent conclusion thereon: *Nacrelli v. Nacrelli*, 87 Pa. Superior Ct. 162, 288 Pa. 1, 136 A. 228. The testimony in this case having been taken in open court and the learned judge before whom the witnesses appeared having had an opportunity to observe their manner of testifying and the evidence produced by libellant and his witnesses being clearly sufficient to warrant the entry of a decree appealed from, the findings of fact by the court below are entitled to respectful consideration. 'In the absence of a jury trial the appellate court is required to consider all the evidence and express an independent conclusion thereon. However, where the testimony of the parties to such action is irreconcilably conflicting, the conclusion of the judge who heard them, as to which is to be believed, will not be lightly disturbed on appeal.' Koontz v. Koontz, 97 Pa. Superior Ct. 70."

A resume of the testimony on behalf of libellant is as follows: She called him vile and opprobrious names both in private and in the presence of other persons; she accused him of having improper relations with a Mrs. Phinney and with a Mrs. Craft, both long since dead; with a Mrs. Fichter, a cousin of the libellant, and with a Mrs. Richmond; she said that she would murder him; she repeatedly accused him of suffering from a venereal disease; she forced him to leave her bed so that he slept upon a studio couch and after this studio couch was sold by respondent without libellant's knowledge he slept in an armchair; she frequently absented herself from home; sometimes for long periods, and when out late at night she deliberately annoyed libellant upon her return by turning on the radio in full volume and in other ways; respondent threatened to poison the libellant and kill him, to hit him with a hammer and with a milk bottle; she hit him with an

ash tray; she refused to speak to him for long periods of time and placed disinfecting crystals in his room; she told him that she wished he had been killed or gone insane; she deliberately annoyed the tenants of the libellant in order to cause them to leave; she hawked her throat and spit at libellant on numerous occasions and she followed him to Wilkes-Barre and engaged in a disgraceful fight with Mrs. Richmond, who was in libellant's company at the request of Mr. Richmond.

While a divorce may be granted upon the testimony of the libellant alone—*Freeman v. Freeman,* 127 Pa. Superior Ct. 557, 193 A. 99—and where there are additional witnesses, the balance of the evidence is not to be determined by the number of witnesses, but by the relevancy and credibility of the testimony of the witnesses—*Sarbiewski v. Sarbiewski,* 127 Pa. Superior Ct. 463, 193 A. 91—the testimony of the libellant is corroborated by that of five disinterested and credible witnesses, to-wit: Mrs. Mary Fichter as to general course of conduct of respondent; Mrs. Madge Emerson as to accusations of respondent with respect to libellant's conduct with Mrs. Richmond, annoyance to tenants and the odor of "crystals;" Mrs. Rosalie Keller as to accusations of running around with other women, noise made by respondent when coming in late at night; Mrs. Stella Keller, as to "crystals," annoyance of tenants, respondent's absence from home, and accusations of infidelity; and George Richmond, accusations of infidelity, threats, calling of names, false accusations, annoyance to tenants, libellant's alleged venereal disease, "crystals," removal of libellant's clothing, and witness's authorization of libellant's trip to Wilkes-Barre with Mrs. Richmond.

Opposed to this conclusive testimony is that, first, of the respondent. This testimony consists almost entirely of denials and countercharges, coupled with admissions as to her conduct towards the libellant on numerous occasions; attitude of jealous suspicion and

unfounded recrimination on the part of the respondent referred to in his opinion by the learned court below. The supporting witnesses, most of whom are near relatives of the respondent, afford us but little assistance; John Evans, the son, testified that he has lived in Wilmington, Delaware for the past twelve or thirteen years and that he has visited his home for short periods during that time "a couple of times a year." His testimony is negative, except as to the nature of the crystals which he says are a harmless disinfectant but admits that they are of the same composition as the disinfectants used in lavatories. Grace Thomas, a sister-in-law, visited the Evans home occasionally for a short time, but was never there in the evening; her testimony is negative. Richard Purdon, a brother-in-law, has not lived near the Evans' in twenty years and his testimony as to what has happened since that time is negative. Oscar Thomas, a brother, testified as to the good housekeeping of Mrs. Evans, that he had often heard Mr. Evans call the respondent vile names and that he had never heard the respondent call the libellant names, strike him or threaten him. On cross-examination he admitted that he was probably at the Evans home only a couple of times during the year preceding this divorce action. Mrs. Edith Purdon, a sister, testified as to the good housekeeping of the respondent, that libellant called the respondent names, and that he frequently struck her—but it is to be noted that the only specific instance of such striking that the witness could recall was alleged to have happened over eighteen years ago. The testimony of Mrs. Emma Benedict, Mrs. Hattie Klein, and Anna Bevan is that Mrs. Evans was a good housekeeper, but their testimony is otherwise negative. Mrs. Grace Jordan testified that she never heard any arguments between the libellant and the respondent, but she further testified that she had never been in their home.

Taking all of this testimony as a whole, we find it is almost parallel with that in *Sharp v. Sharp,* 106 Pa. Superior Ct. 33, 161 A. 453, where a decree was granted. That case has been cited with approval in *Briggs v. Briggs,* 145 Pa. Superior Ct. 460, 21 A. 2d 415.

What constitutes "indignities" has often been stated by this court. Quoting from *Deutsch v. Deutsch,* 141 Pa. Superior Ct. 339, 14 A. 2d 586: "The course of conduct amounting to such indignities as would justify a divorce is apparently incapable of specific or of exact definition. Each case must necessarily depend upon its own facts. ...... Such indignities we have frequently said may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient: Sleight v. Sleight, 119 Pa. Superior Ct. 300, 181 A. 69."

We quote from the opinion of the court below by EAGEN, J. who heard the case; "The Court after a very careful consideration of the testimony of the various witnesses and record in this case is of the opinion that the divorce should be granted. We are convinced that the primary source and cause of this unfortunate period of trouble in their married life was the jealous nature and the suspicious attitude on the part of the wife for the husband. For many years the wife has been obsessed with the idea that her husband has been running around with other women. This she frankly admits and also that she is still of the same mind. Her suspicions have caused her to publicly accuse him of infidelity and the record discloses that she has frequently and without hesitation told his neighbors and friends, he was no good and untrue. She has accused him publicly of suffering from a serious social disease. This the Court does not believe and we feel also that

the libellant has been a true and faithful husband. While the respondent has been a good housekeeper and provided a comfortable home for the husband until recent years, her strong ideas about the libellant's infidelities have caused this serious rift in their married life and resulted in many years of unhappiness, not only for her husband but for herself. Their home during this period has been anything but peaceful and the condition of the husband in particular has been one of misery and unhappiness. The respondent's suspicions and accusations resulted in serious fights, unwholesome name calling and many other unpleasant situations, all of which caused great embarrassment to the libellant and in the opinion of the Court caused his life to be difficult and burdensome. In view of the above, the Court is, therefore, of the opinion that the record discloses a series of indignities to the person of the libellant, which justifies this action in divorce."

Having carefully examined and considered the entire testimony we have come to the same conclusion as did the court below.

The assignments of error are overruled and the decree of the court below is affirmed.