## Matovcik, Appellant, *v.* Matovcik.

268

Argued April 15, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*Leonard A. Mazer*, for appellant.

*William J. Krzton*, with him *Esler W. Hays*, for appellee.

OPINION BY WRIGHT, J., July 14, 1953:

In this divorce case the grounds alleged were cruel and barbarous treatment and indignities to the person. At the conclusion of the hearing before the lower court, plaintiff's counsel conceded that there was insufficient evidence of cruel and barbarous treatment. Judge SMART refused to grant a decree on the grounds of indignities to the person. Plaintiff has appealed from the dismissal of his complaint.

The interest of the Commonwealth in the preservation of the marriage status makes it an interested third party in every divorce proceeding: *Bonomo v. Bonomo,* 123 Pa. Superior Ct. 451, 187 A. 222. In order to warrant a decree plaintiff must establish compelling and imperious reasons, and the burden is upon him to prove his case by a preponderance of clear and satisfactory evidence: *Orsuto v. Orsuto,* 171 Pa. Superior Ct. 532, 91 A. 2d 284.

The ground of indignities cannot be defined with exactness. We favor the following statement by Judge RENO in *Trimbur v. Trimbur,* 171 Pa. Superior Ct. 541, 91 A. 2d 307: "An indignity to the person is an affront to the personality of another, a lack of reverence for the personality of one's spouse. It consists of various acts, so varied in their nature and impact that the courts have not undertaken to define the offense in more than general terms. Crawford v. Crawford, 64 Pa. Superior Ct. 30; Breene v. Breene, 76 Pa. Superior Ct. 568. But the offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement. For then, when the foundation has collapsed the superstructure falls, and inevitably the married condition becomes intolerable and life is indeed a burden. This is the doctrine of all the cases."

In an action for divorce on the ground of indignities, the burden is on the plaintiff to prove, not only that defendant by a course of conduct rendered plaintiff's condition intolerable and life burdensome, but also that plaintiff was the innocent and injured spouse: *Wilson v. Wilson,* 163 Pa. Superior Ct. 546, 63 A. 2d 104. Where a divorce case is heard by a trial judge, without a jury, his judgment upon the credibility of the witnesses is entitled to the highest consideration in an appellate court: *Handy v. Handy,* 163 Pa. Superior Ct. 49, 60 A. 2d 415. With these well settled legal principles in mind, we have proceeded to carefully review the testimony in compliance with that requirement: *Bobst v. Bobst,* 357 Pa. 441, 54 A. 2d 898.

Plaintiff, presently aged 36, and defendant, presently aged 34, were married on November 4, 1942. During their married life they lived at various places, the last of which was Glassmere, Pennsylvania. Two children were born, Kathleen and Ronald, now aged 10 and 6 respectively. Plaintiff asserts there was a separation in January, 1951. Defendant alleges she was abandoned in April of that year. To quote from his brief, appellant's case "is based on the interference by the appellee's family, the vile language she used to the appellant in the presence of strangers and their children, her dealing in the black market, three attempts at abortion, and the issuance of a $4000.00 insurance policy to the appellee by a stranger to the appellant during his absence in the service".

The testimony does not portray any undue family interference, nor is there any evidence that defendant dealt in the black market. Plaintiff's complaint in this regard is that he would come home on occasion and find whiskey and beer bottles on the porch as the result of parties at which "black market meat and butter and things that was hard to get" were consumed. These

affairs occurred some years prior to the separation. Among those present were members of the wife's family. Plaintiff raised no objection at the time, either to the parties or to the guests.

It appears that, while defendant would admittedly "swear at" her husband, these incidents generally occurred in the heat of a quarrel precipitated by action of the plaintiff. On one occasion plaintiff fell asleep while smoking. His cigarette burned a large hole in the chair. In the ensuing argument plaintiff physically abused his wife and locked her out of the house. On another occasion plaintiff complained that the house was untidy. To keep house inefficiently is not an indignity unless it is done intentionally. In any event plaintiff's complaint came with poor grace in view of his admission that he would return from his work in a service station and lie down on the bed without removing his soiled clothes, and would eat without washing. A typical quarrel occurred when defendant hid his daughter's tricycle which was left sitting out in the alley. Our experience indicates that this is not an unusual situation for parents of small children to encounter. Clearly it was not an indignity on the part of the wife.

Counsel for appellant emphasizes the matter of the insurance policy. The evidence discloses that in 1945 plaintiff was in the service and defendant was staying with her mother in New Kensington. Harold W. Andree possessed a life insurance policy in which his sister was named as beneficiary. Defendant's name was substituted. When asked if he was married, Mr. Andree's answer was "No. Single and happy". His explanation of the beneficiary change is as follows: "Well, it was Kathleen Matovcik is who it was meant for but at the office they told me she wasn't of age; her name couldn't be put on there. They asked me if

she had a beneficiary or a father or mother; if it would be O.K. to put the mother's name on and I said "All right".

Appellant's counsel argues "that this is not in the natural course of events in human life." While we may understand his inference, the situation was not inconsistent with innocence. Futhermore, no great significance can be attached to the matter in view of plaintiff's admission that he subsequently saw the policy, and raised no objection. Defendant explained the situation as follows: "Andy also knew it whenever I got it because I showed him the policy just as soon as I received it and he was home on a—not a furlough but he just came home on a week end pass and I had shown him the policy and I also showed it to his brother Mike and his wife Madge, that this man, Mr. Andree, came to me and he said, "Irene, I just think the world of your daughter Kathleen," he says, "and I want to do something for her. He says "I want to make her beneficiary of this policy".

The argument to which the major portion of appellant's brief is directed relates to defendant's desire not to have children and her attempts at abortion. For a woman with a family not to want additional children is not unnatural, especially when she and her husband fail to get along well. In any event it is not an indignity: *Wagner v. Wagner,* 112 Pa. Superior Ct. 485, 171 A. 419; *James v. James,* 126 Pa. Superior Ct. 479, 191 A. 191. Plaintiff testified that defendant had vaginal bleeding before Kathleen was born; and that, during her second pregnancy, she admitted using a crocheting needle upon herself. This alleged admission was denied by the defendant. A full term child (Ronald) was born to her then. The third attempt at abortion purportedly occurred in February 1951. This is alleged to be of particular significance because of plaintiff's

testimony (denied by defendant) that there was no sexual relationship during the previous year, although the parties were living in the same dwelling.

Dr. Croyle testified that defendant consulted him on February 5, complaining of abdominal pain. His diagnosis was a possible appendicitis. The patient was referred to Dr. Snyder and admitted to the Citizens General Hospital of New Kensington, from which institution she was discharged on February 11. The hospital records show a diagnosis of "pregnancy and subacute appendicitis". Defendant again consulted Dr. Croyle on February 20, at which time she had uterine bleeding. The patient was again sent to the hospital, this time for surgery. Dr. Sparks testified that he removed the appendix and performed a dilation and evacuation of the uterus, removing therefrom blood clots and infected placental tissue. We have briefly summarized the medical testimony because such great importance is attached to it by appellant's counsel. However, it establishes at best no more than that defendant was pregnant and lost the child. It does not prove that she performed or submitted to an abortion.

While the evidence indicates a high degree of domestic infelicity, that unfortunate situation does not constitute legal cause for divorce: *Politylo v. Politylo,* 173 Pa. Superior Ct. 223, 95 A. 2d 241. Defendant impressed the hearing judge "as being quiet and truthful". We have full confidence in his judgment. Our conclusion is that the charge of indignities has not been established and that plaintiff was not an innocent and injured spouse.

Decree affirmed.