Wieber *v.* Wieber, Appellant.

534

Argued March 25, 1954.   Before Ross, Gunther, Wright, Woodside and Ervin, JJ.

*John J. King,* for appellant.

*Robert Boyd, Jr.,* for appellee.

OPINION BY WRIGHT, J., July 13, 1954:

Anna Wachter Wieber instituted an action in divorce a.v.m. against her husband, Frederick Wieber. The ground alleged was indignities to the person. The bill of particulars contained forty-four specifications. There were eight hearings, and the testimony covers six hundred twenty-seven typewritten pages. The master spent seventy working hours on the case. He recommended a decree in a forty-seven page report, to which thirty-four exceptions were taken. The lower court dismissed the exceptions, approved the master's report, adopting his findings and conclusions, and entered a final decree. This appeal followed.

Pursuant to our duty, we have carefully reviewed the entire record. See *Matovcik v. Matovcik*, 173 Pa. Superior Ct. 267, 98 A. 2d 238. In the words of Mr. Justice LINN in *Bobst v. Bobst*, 357 Pa. 441, 54 A. 2d 898, we must apply "the cold tests of common experience". While we are not concluded by the master's findings, his judgment upon the question of credibility is entitled to the fullest consideration. This is especially true when his report, as in the case at bar, presents a searching analysis of the testimony. See *Smith v. Smith*, 157 Pa. Superior Ct. 582, 43 A. 2d 371.

The parties were married on June 20, 1942. The husband is now forty years of age, and the wife is thirty-three. A male child was born to the union, who is now seven years of age. In addition, the wife suffered two miscarriages. During the first part of their married life, the parties lived with the wife's parents, subsequently moving into a separate home in June, 1945. They returned to the wife's parents in April or May of 1948. In October, 1948, they again moved into a separate home, where they lived until their separation. The master found that, during the entire period of their married life, appellant exhibited an egotistical

and domineering attitude which tended to relegate the wife to a menial role of abject submission. He established a strict routine which was to be followed in all of her household duties, and which was carried over even into her hours of leisure. Following the birth of their child, the wife took on extra weight, tipping the scales at considerably over two hundred pounds. Appellant used this obesity as the basis for continuous name calling, the milder of the terms being "beef trust" and "walrus". He used these derisive appellations, and others of a much more vulgar nature, several times a week, not only in the privacy of their home, but also in the presence of friends and relatives. Furthermore, he showed great disdain for his wife's manner of dress, and publicly made a point of slightingly comparing her to other women. All of this treatment tended to humiliate and embarrass the wife and placed her under nervous tension.

Notwithstanding his attitude toward his wife's physical appearance, appellant insisted on nightly sexual intercourse irrespective of the wife's desires or feelings in the matter. In addition to the vulgarities appellant employed with respect to his wife's overweight, he habitually used profane language toward her, both at home and in public. This was done with such frequency that the couple's child began repeating the language. Although he professed dislike for the child, in part because of its physical appearance, appellant accused his wife of neglecting it. He did not want the child to bear his name, and frequently exhibited such a violent attitude that the wife feared for the child's life. See *Picciano v. Picciano,* 110 Pa. Superior Ct. 189, 168 A. 488. Appellant also exhibited a hostile attitude toward his wife's family. On one occasion, at Christmas, he appeared at their home in an intoxicated condition, using vile and profane language

and making threats, all of which caused appellee extreme embarrassment. On several occasions appellant threatened his wife with bodily harm; at one time brandishing an iron bar.

In February, 1951, the wife left the home. Appellant subsequently attempted to take his life with gas and was placed in the Philadelphia General Hospital. The wife secured his release after several days, and then went back to live with him. However, his treatment of her was no better than before, and she finally left in June, 1951, and filed the divorce action. The evidence tended to show that the appellant's conduct was unprovoked and without any excuse. It was also shown that, while the wife enjoyed good health prior to her marriage, she became high strung and nervous and suffered from high blood pressure during the time she lived with appellant. Her health commenced to improve after the parties separated. The wife's testimony was corroborated by many witnesses and, although some incidents were denied by appellant, the master was unfavorably impressed with his testimony. On the other hand, he found the evidence of the wife and her witnesses credible. See *Sacks v. Sacks*, 172 Pa. Superior Ct. 543, 94 A. 2d 147; *Oliver v. Oliver*, 172 Pa. Superior Ct. 600, 94 A. 2d 124. Appellant's attitude at the hearings was argumentative, evasive and contradictory. His violent temper was to some extent demonstrated at these meetings, as the master points out, when appellant frequently pounded on the table.

Appellant complains that he was not permitted to cross-examine the wife's father, one of the witnesses in her behalf. This witness, William Wachter, testified at a hearing before the master which, because of the lateness of the hour, was adjourned at 4:30 in the afternoon. After the hearing, he collapsed in the master's office, and was unable to appear the next morn-

ing. The physician who was attending him testified
that Mr. Wachter was suffering from general ill health
aggravated by high blood pressure, and that it could
have been fatal for him to return to the stand for the
purpose of testifying further. When appellant learned
that Mr. Wachter would not be available, he demanded
that the witness appear and the opportunity to cross-
examine be given him. Counsel for the wife offered
to withdraw all the testimony of the witness, but coun-
sel for appellant objected, stating: *"The last testimony
was favorable to the defendant,* in my opinion, and the
issue here is between this woman and her husband"
(Italics supplied). Mr. Wachter did not again appear
on the stand and, consequently, appellant did not have
an opportunity to cross-examine him. In his report
the master stated "that the testimony given by Mr.
Wachter did not particularly strengthen the case of the
plaintiff in that he confirmed testimony previously
given and did in no way add material facts in his tes-
timony". The evidence of the witness was corrobora-
tive only, and added nothing to the wife's case. While
we realize that the right of cross-examination is im-
portant, see *Kaplan v. Loev,* 327 Pa. 465, 194 A. 653,
we are not persuaded that appellant was injured in
any way by not being able to question Mr. Wachter.
In the first place, appellant objected to the withdrawal
of the testimony which, under the circumstances, we
deem the proper procedure. Secondly, he claimed that
the testimony was favorable to him. Finally, a read-
ing of the record gives the impression that appellant's
objections and argument relative to the cross-examina-
tion were intended largely to harass the wife. We
agree with President Judge LEWIS of the court below
that the omission of cross-examination was harmless
error under the circumstances.

Appellant also contends that it was error to permit the wife's attorney during cross-examination, to refer to the record made during the period of appellant's stay in the Philadelphia General Hospital. This record was introduced into the evidence by appellant. It contained the statements made by appellant upon his admission to the hospital, and also the statements made by him to the examining physicians, together with their diagnosis and conclusions. The nature of the cross-examination, to which objection was taken, was a series of questions asking whether appellant had made certain statements while he was being interrogated at the hospital. There was no attempt by counsel for the wife to use the record as proof of any ailment or injury, as was the case in *Paxos v. Jarka Corporation,* 314 Pa. 148, 171 A. 468, cited by appellant. Furthermore, appellant in direct examination testified concerning his stay in the hospital, and the hospital record was already in evidence as a part of appellant's case. We consider it as competent proof of the facts therein contained. See *Freedman v. Mutual Life Ins. Co. of New York,* 342 Pa. 404, 21 A. 2d 81; *McKeehan Estate,* 358 Pa. 548, 57 A. 2d 907; *Glickman v. Prudential Ins. Co. of America,* 151 Pa. Superior Ct. 52, 29 A. 2d 224; Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, 28 P.S. 91a et seq.

Appellant's remaining arguments are primarily directed to the proposition that the evidence was not sufficient to warrant the granting of a divorce. It would serve no useful purpose to further detail the evidence. It is replete with instances of indignities extending throughout the major part of the married life of the parties. The actions of appellant were of such character as to render the condition of any woman of ordinary sensibility and delicacy of feeling intolerable and her life burdensome. See *Commonwealth ex rel. Whit-*

*ney v. Whitney,* 160 Pa. Superior Ct. 224, 50 A. 2d 732. The constant references to her overweight condition, considering their vulgarity, the places where made, and the manner in which appellant made them, were, in themselves, sufficient to create an intolerable condition. However, this was simply one facet of appellant's overbearing conduct. His continual use of profanity, his slighting references to their child, his demand that his wife's actions should be subservient to his will, all went to characterize a marriage in which the wife's position seems to have been little more than that of a chattel. What constitutes indignities authorizing a divorce depends largely on the circumstances: *Brown v. Brown,* 163 Pa. Superior Ct. 490, 63 A. 2d 130. Here the acts were persisted in over a long period of time. See *Othmer v. Othmer,* 158 Pa. Superior Ct. 384, 45 A. 2d 389. The evidence disclosed a series of incidents from which settled hate and estrangement might properly be deduced. See *Taylor v. Taylor,* 142 Pa. Superior Ct. 441, 16 A. 2d 651. Furthermore, as is required under our law, the evidence clearly showed that the wife was the innocent and injured party. See *Politylo v. Politylo,* 173 Pa. Superior Ct. 223, 95 A. 2d 241; *Wilson v. Wilson,* 163 Pa. Superior Ct. 546, 63 A. 2d 104. In fact, appellant himself testified that she conducted herself properly, and acted as a wife should.

Decree affirmed.