## Soper, Appellant, *v.* Soper.

Argued October 7, 1954. Before RHODES, P. J. HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*James W. Cullen,* for appellant.

*John P. Valillee,* for appellee.

OPINION BY ROSS, J., March 24, 1955:

This action, brought originally for a divorce a mensa et thoro and later amended to seek a divorce a.v.m., on the ground of indignities to the person, was heard before a judge of the court below, who ordered dismissal of the complaint.

The parties were married in New York City on January 21, 1947, when plaintiff was about 23 years old and defendant approximately a year younger. They returned to live on defendant's farm near Athens, where they resided until plaintiff left in May 1952. They have no children.

Plaintiff charges that defendant associated with other women, accused her of "running around" with

other men, and called her vile names. The name-calling may be disposed of almost summarily. Plaintiff testified that it occurred "two or three times" during the course of heated arguments just prior to the separation.

As we are required to do (*Cutter v. Cutter*, 165 Pa. Superior Ct. 103, 68 A. 2d 192; *Wieber v. Wieber*, 175 Pa. Superior Ct. 533, 106 A. 2d 854), we have made an independent examination of the 336 printed pages of testimony in this case and we conclude that the learned trial judge correctly dismissed the complaint.

No good purpose would be served by setting forth the full details of the incidents which formed the basis of the charges and counter-charges. Many of them took place after the separation and are relevant only as they shed light upon the reasonableness of the suspicions of the parties.

With respect to defendant's association with other women plaintiff testified to an occasion in February 1952 when she was driving with a woman friend and recognized her husband with another woman driving the latter's car. Plaintiff followed them but lost them in traffic. Defendant, according to her testimony, at first denied and then later admitted his presence in the car with the woman. Over objection, she was permitted to testify to conversations with three named women which allegedly confirmed his association with them.

Defendant denied that his association with the women was improper and explained the circumstances of several occasions. On one, he stated, he had started to go to Elmira to "check on" plaintiff when he had mechanical difficulties with his truck and started to walk along the road. One of the women named by plaintiff drove by with her sister-in-law and picked him up. At their request he drove the car to Elmira. He

did not return with the woman, and the sister-in-law was present with them during the entire time. That, according to defendant, was the only time he was with the woman "on a trip". The woman, called as a witness, corroborated defendant's version of the Elmira trip but admitted dancing with him on another occasion in Elmira, although she had not gone there with him. On another occasion, in response to her request, he took another of the named women, who is his second cousin, home when he came upon her and her husband having an argument along the street.

In December 1951 plaintiff was involved in an automobile accident and was driven to her brother's home by an identified man. Plaintiff told defendant that another person had driven her there but later admitted to him the true identity of the man and that she had been with him previously thereto. Defendant's suspicions were thereupon aroused. At a wedding which defendant was unable to attend because of the duties of his farm work, plaintiff associated with the man. In July 1951 plaintiff spent some time with the man at a picnic. Several witnesses testified to having seen her with the man at a taproom in Elmira, holding hands and drinking beer. There was extended testimony as to her association with the man in the summer of 1952, one incident dealing with the arrest of the man in a partially intoxicated condition while plaintiff was driving with him. Another dealt with a fishing trip, the details and inferences of which shall here be omitted.

The essential feature of the offense of indignities to the person within the meaning of our Divorce Law (Act of May 2, 1929, P. L. 1237, sec. 10, as amended, 23 PS sec. 10) is that it must consist of a course of conduct or continued treatment which renders the condition of the innocent party intolerable and his life

burdensome. *Kobryn v. Kobryn,* 174 Pa. Superior Ct. 472, 102 A. 2d 173; *Bredbenner v. Bredbenner,* 175 Pa. Superior Ct. 580, 107 A. 2d 169. To prevail plaintiff must sustain the burden of proving not only that the defendant by a course of conduct rendered his condition intolerable and life burdensome, but also that he was the innocent and injured spouse (*Matovcik v. Matovcik,* 173 Pa. Superior Ct. 267, 98 A. 2d 238; *Vergoni v. Vergoni,* 175 Pa. Superior Ct. 522, 107 A. 2d 144), and such proof must be based on a preponderance of clear and satisfactory evidence. *Orsuto v. Orsuto,* 171 Pa. Superior Ct. 532, 91 A. 2d 284; *Gensemer v. Gensemer,* 176 Pa. Superior Ct. 508, 108 A. 2d 834.

Where the association of one spouse with someone of the opposite sex furnishes the other spouse with reasonable grounds for suspicion, accusations of infidelity do not support the charge of indignities. *Kranch v. Kranch,* 170 Pa. Superior Ct. 169, 84 A. 2d 230; *Cunningham v. Cunningham,* 171 Pa. Superior Ct. 577, 91 A. 2d 301; *Politylo v. Politylo,* 173 Pa. Superior Ct. 223, 95 A. 2d 241. Plaintiff's conduct with another man in the instant case gave rise to justifiable suspicion on the part of defendant and she will not be heard to complain of the "indignities" of his accusations of infidelity arising out of her conduct. She has not, in our view, sustained her burden of proving herself an innocent and injured spouse, and the complaint was, therefore, properly dismissed.

Decree affirmed.