Rosenblatt *v.* Rosenblatt, Appellant.

Argued March 27, 1958. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Anthony W. Novasitis, Jr.,* for appellant.

*Joseph Ominsky,* for appellee.

OPINION BY WATKINS, J., June 11, 1958:

This is an appeal from a decree of the Court of Common Pleas No. 3 of Philadelphia County, granting Samuel Rosenblatt, the appellee husband a divorce from Ruth Marion Rosenblatt, the appellant wife on the ground of indignities.

The parties were married in Wilmington, Delaware on May 4, 1942. The husband was born on November 21, 1910 and the wife on July 26, 1913. There are no children of the marriage although there was a still-born child on October 23, 1944.

At the time of the marriage, and for approximately two years before, the appellee was a boarder at the home of appellant's father at 751 South Second Street, Philadelphia. After the marriage they took up residence at that address, with his wife's father and sister, and it remained their residence until their final separation on Sunday, March 16, 1947.

He was without a specific trade at the time of his marriage and was variously employed after his discharge from the service. He gave his occupation at the time of the hearing as that of a cloth cutter and that he was temporarily unemployed. The wife was a housewife by occupation but assisted her father in the wholesale egg business that was conducted at their home.

Within one week of their marriage, the appellee husband was inducted into the United States army. He served here and overseas, suffered combat fatigue which caused a nervous disorder that required that he be returned from overseas for hospitalization. He was hospitalized at Valley Forge hospital and finally discharged from the United States army, on a disability pension, on January 19, 1944.

This action was started in 1950 and has been delayed for a variety of reasons but was finally referred to a master in August of 1953. The case was bitterly contested and there is voluminous testimony taken at ten master's hearings over a two-year period, requiring over 1000 pages of testimony. The delay was largely caused by the appellant wife who asked for continuances on the ground of illness.

The appellant, both in the court below and in this appeal charged the master with antagonism and dislike directed toward her. On this matter we will accept the opinion of Judge MILNER of the court below, where he says, "At the outset of our discussion we would make our opinion clear that the allegations of the defendant concerning the alleged antagonism and dislike of the master toward the defendant and her sister and the master's alleged retaliation against defendant by recommending that a divorce be granted, are completely without merit. The late John H. H.

Morrow, the master in this case, died recently and after filing his report; he was a respected and experienced member of the bar of Pennsylvania for over twenty-six years and was held in high regard by both the bench and bar for his learning and probity.

"From our independent study of the notes of testimony we find that the defendant and her sister did attempt by various means to direct, manage and control the proceedings. In light of the obstreperous conduct of the defendant and her sister as disclosed in the record before us we feel the master showed himself to be extremely patient, understanding, fair and competent to handle the proceedings. Nothing in the record shows any bias or prejudice on part of the master, but it does show his efforts, and indeed his struggle to keep control of the hearings. Insofar as the exceptions are intended by defendant to be based upon the foregoing complaints of the master's attitude and conduct, we find them scandalous and without merit." We will also quickly dispose of appellant's challenge to the master's determination of the credibility of the parties and their witnesses. The rule is well settled as to the weight to be accorded to the master's findings and his determination of credibility. *Boyer v. Boyer,* 183 Pa. Superior Ct. 260, 130 A. 2d 265 (1957).

It is impossible to lay down a general rule as to what constitutes indignities to the person so as to render the condition of the injured spouse intolerable and life burdensome. It has been held that "the offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement:" *Boyer v. Boyer,* supra, at page 271. Such matters necessarily must depend upon the circumstances in the case and the position in life, the character and disposition of the

parties. *Hewitt v. Hewitt,* 136 Pa. Superior Ct. 266, 7 A. 2d 45 (1939).

Most of the trouble in this case began after the husband's discharge from the army. After he was released from the hospital he was told by the appellant that "she is going to hold me under her thumb because it was her that had me released, if it wasn't for her they would put me away in some institution" and that "she could do whatever she wanted with me."

In Judge MILNER'S opinion he reviewed the course of conduct as set forth in the testimony as follows:

"Plaintiff was unemployed for a period immediately after his discharge from the Army. He was constantly reminded of this by his wife and her family and of the fact that the expenses necessary for his and his wife's maintenance were borne by his father-in-law. The defendant constantly held over the plaintiff the threat of throwing him out of the house because the house was her father's and frequently said to the plaintiff that 'she could do as she pleased in her father's house, but nothing belonged to me (plaintiff) in that house and I didn't have a thing to say whatsoever.'

"In October 1946, the defendant locked the plaintiff out of their bedroom, refused him entrance to their bedroom and forced him to sleep on a cot down stairs. Plaintiff was treated with contempt and ridicule by his wife, sister-in-law and father-in-law and was treated as a servant by the three of them.

"The plaintiff was not permitted by his wife to bring his friends into the house and even his father's visits were not welcome by his wife.

"The defendant continually abused the plaintiff verbally by foul language calling the plaintiff 'a son-of-a-bitch', 'bastard' and other words too foul to record here. The plaintiff was frequently locked out of the

house by his wife and was forced to plead to gain entrance therein.

"The plaintiff was neglected by the defendant often to the extent of not getting anything to eat. He was also subjected to the violent temper of the defendant on which occasions small household articles were thrown at him by the defendant. One such occasion occurred in October, 1946. The plaintiff came in the house and was told by his wife, 'Get out, get out, it is not your house, and all that.' The Plaintiff, nevertheless, sat down in the kitchen and requested something to eat. The defendant refused to prepare any food for the plaintiff and 'she grabbed the dishes and started thowing them at me (plaintiff).' The plaintiff left the house to escape the violent temper of the defendant.

"The defendant often humiliated the plaintiff by uncomplimentary implications and at times outright unfounded derogatory statements concerning his mental condition to the officials at the Veterans Administration, the Philadelphia Police and to the plaintiff himself, telling him that when he visited his brother at Byberry she hoped the hospital would keep him and his father both."

Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement. *Evans v. Evans,* 152 Pa. Superior Ct. 257, 31 A. 2d 590 (1943). It is plain from the reading of this record that the pattern of behavior manifested by the appellant wife presented a case of indignities within the indicia set forth. It has been held that in essence, "An indignity to the person is an affront to the personality of another, a lack of reverence for the personality of one's spouse."

*Davis v. Davis,* 180 Pa. Superior Ct. 404, 407, 119 A. 2d 596 (1956).

Finally the trials and tribulations of this husband came to a head when his wife threw his clothes downstairs, yelled "murder" and "police" and physically assaulted him, called him a "son-of-a-bitch" and "bastard", and tore his shirt. She then locked him out and afterward changed the lock on the door so that he could not return. There is no doubt that the treatment suffered by the appellee would embarrass, degrade and humiliate any person of ordinary sensibility, but due to the nervous disorder from which he suffered, as a result of battle fatigue, his suffering, pain and frustration were made, thereby, much more serious. Because of this treatment he became quite ill, lost 20 pounds and was generally run down.

It is our opinion that the appellee met the burden of establishing, by a preponderance of the evidence, that his wife, the appellant, offered such indignities to his person as to render his condition intolerable and life burdensome; that he is the injured and innocent spouse and entitled to a divorce.

Decree affirmed.