Lombard *v.* Lombard, Appellant.

Argued November 15, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Harry Alan Sherman*, for appellant.

*Stephen A. Zappala*, with him *Zappala & Zappala*, for appellee.

OPINION BY ERVIN, J., December 14, 1960:

The judge of the court below, who heard the testimony without a jury, granted the husband a divorce on the ground of indignities. The wife appealed.

The trier of facts, who sees the parties and their witnesses and hears them testify, has a distinct advantage in determining which of divergent or contradictory statements should be accepted as true. In

divorce cases, however, where there has been no jury trial, the appellate courts may not escape their duty of examining the evidence de novo for the purpose of determining whether the charges alleged in the complaint have been sustained: *Bobst v. Bobst,* 357 Pa. 441, 444, 445, 54 A. 2d 898; *Hurley v. Hurley,* 180 Pa. Superior Ct. 364, 366, 119 A. 2d 634.

Appellant argues that the plaintiff's case is based solely upon his own testimony uncorroborated by other witnesses or evidence. A decree may be supported by the testimony of the plaintiff alone. Where, however, the testimony of the plaintiff alone is contradicted and shaken by the defendant and where there are no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out: *Pore v. Pore,* 189 Pa. Superior Ct. 615, 618, 151 A. 2d 650.

We gather from a thorough reading of the record that the parties were married on February 18, 1950. The plaintiff-husband is 35 years of age and the defendant-wife is 32 years of age. The husband bought a house in the City of Pittsburgh prior to the marriage. Shortly after the marriage the parties moved into the first floor of the home, the second floor being rented to a tenant for a rental of $45.00 per month. The parties have one child, a girl eight years of age. The parties first separated on May 27, 1954 and the husband filed a complaint in divorce. The parties reconciled their differences and continued to live together thereafter until the final separation, which occurred March 4, 1958. The wife and her daughter now live with her parents in the City of Pittsburgh. Prior to the marriage the husband had been in the armed services and has been for some time receiving compensation from the government for a condition which was evidently service connected. He is not a well man and has a heart condition and is also suffering from the collapse

of an artery in one leg. We also gather from the record that the husband is highly excitable and of quick temper. The husband was a lithograph plate maker and made between $150.00 and $200.00 a week at his work when he was able to work.

The principal complaint of the husband is that his wife ran up bills or didn't pay the bills but presented him with receipts which she herself had marked as paid. He also complained about her borrowing money from the neighbors. He also complained that his wife procured the statements from the bank and would not or could not produce them for his inspection. He stated that during the entire period of their married life he gave her every pay check and she cashed them and gave him enough money to pay for cigarettes, union dues and gas for his car. He also charged her with forging his name to a check and obtaining $950.00 out of his bank account. The wife completely denied all of these charges. She admitted that she cashed the checks either at the bank or the A. & P. store but says that she returned the cash to him and that he paid the bills. She also says that he gave her only $10.00 a week for groceries for the first four years and then after the first reconciliation raised the amount to $20.00 a week. She says that she was unable to pay her bills because he did not give her sufficient money to do so. She also denied that she forged his name to a check. She admits that she got the statements and checks from the bank but says that she gave them to him.

There does not seem to be any doubt but that these parties did have arguments about finances and that this was the main cause of their trouble. The husband did not corroborate his testimony on this subject and it seems to us that he could have done so if he had chosen to do so. On the contrary, the wife proved by the second floor tenant, Mrs. Tassari, that on one

occasion the wife came to the second floor crying, with two black eyes and a swollen nose, and borrowed 25 cents from her for carfare. The husband did not produce any of the neighbors to show that his wife borrowed money from them and the wife denied borrowing any money from them except the above mentioned 25 cents from Mrs. Tassari.

Even assuming that the husband is correct, extravagance, unrelated to a willful intention to humiliate, is not evidence which will warrant a divorce on the ground of indignities to the person: *Hepworth v. Hepworth,* 129 Pa. Superior Ct. 360, 195 A. 924; *Blose v. Blose,* 163 Pa. Superior Ct. 322, 326, 61 A. 2d 370; Freedman, Law of Marriage and Divorce in Pa., Vol. 2, 2nd ed., §333.

The husband also charges that his wife had an affair with one Ben Proll. The wife did admit before several witnesses that she had committed intercourse with Proll but shortly thereafter denied that this was the truth and said that the only reason she made the admission was to comply with her husband's wishes to do so after he had given her a beating to make her do so. She testified that she had never seen Proll since her marriage to the plaintiff. No other evidence was produced to show that she was ever with him. The court below said upon this subject: "It is not the purpose of this Court to find that she was having an affair with any other man because the evidence is not sufficient to prove the same and I do not wish to sustain any empty charges." We agree with this statement.

The husband also complains that when he was in the hospital on two separate occasions after the final separation, she came there and told him that she would have him arrested and also told him that "I hope you lose your legs." She admitted making the visits but denied saying she would have him arrested and saying

"I hope you lose your legs." The husband says that he told her that he was through with her and told her to get out. Even if the husband's version be accepted as true, he certainly invited some adverse remark when he told her to get out. She says that on one of the occasions she took her little girl to see her father in the hospital and she also says that she went to see him because she felt sorry for him.

The wife testified that on numerous occasions the husband beat her, strapped her and blackened her eyes and she corroborated her story by the testimony of Mrs. Tasarri, the second floor tenant, and her brother, Michael A. Galluci. The wife also testified that when she finally left on March 4, 1958 her husband had a knife at her throat and told her to "tell him where this money was or else he would kill me and my little girl."

It is significant that the husband never denied assaulting the wife or beating or threatening her and the child with a knife. The husband not only has the burden in an indignities case of proving that the defendant, by a course of conduct, rendered plaintiff's condition intolerable and life burdensome, but also that the plaintiff was the innocent and injured spouse: *Matovcik v. Matovcik*, 173 Pa. Superior Ct. 267, 270, 98 A. 2d 238. The failure of the husband to even deny the charges of cruelty leaves the wife's charges on this subject unanswered and therefore we believe them to be the truth. The plaintiff, under this state of the record, is not an innocent spouse.

Decree reversed.