Hanna *v.* Hanna, Appellant.

Argued March 25, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Maxwell P. Gorson,* for appellant.

*James F. Doud,* for appellee.

OPINION BY WRIGHT, J., June 15, 1961:

On October 25, 1957, Anna Hanna filed a complaint in divorce a.v.m. against her husband, Thomas D. Hanna, on the ground of cruel and barbarous treatment and indignities to the person. The case was referred to a Master who held a hearing on March 4, 1958, at which time the wife testified. The husband had been served with process and was properly notified of the hearing but did not appear. On March 21, 1958, the Master filed her report recommending that a divorce be granted. Following the entry of a rule for a final decree, the case was referred back to the Master on June 25, 1959, for the taking of testimony on the part of the husband. There were further hearings on July 2 and 8, 1959, following which the Master filed a supplemental report on July 14, 1959. The matter was referred back to the Master a second time, and there was a further hearing on August 6, 1959. The Master thereafter filed a second supplemental report on January 25, 1960. Because of formal objections, the matter was referred back to the Master a third time on April 25, 1960, following which the Master filed a third supplemental report on August 10, 1960. The husband's exceptions were dismissed on October 13, 1960, and a final decree was entered on November 15, 1960. The husband has appealed.

As indicated by the preceding paragraph, this case has had a long and involved procedural history, and there is a voluminous original record. Ida Idomir and Thomas D. Hanna were married at Elkton, Maryland, on December 12, 1952.[1] At that time the parties were respectively twenty-one and twenty-eight years of age. They lived together as husband and wife at 5008 Walnut Street in the City of Philadelphia until sometime in January, 1957. No children were born to their union. According to the wife's theory, the husband's conduct finally compelled her to leave the common habitation. She is employed as a nurse-anesthetist. The marriage certificate sets forth that the husband is a chemist by occupation. However, he stated at one of the hearings that he is "a physiologist in aviation". Our independent review of the testimony leads us to agree with the court below that the instant case "may be resolved into a contest of credibility". If the testimony of the wife is to be believed, the husband has been guilty of indignities and cruel and barbarous treatment. If the denials of the husband are to be credited, the divorce should not be granted.

The wife testified that trouble started soon after the marriage, that her husband did not bathe or change clothes; that he had an offensive odor; that he used foul language; that he called her vulgar names, such as "old bag", "tramp", "two-bit whore", before friends, relatives, doctors, and students; that he publicly accused her of selling her body for hire; that there was constant difficulty about finances; that she worked at the hospital and taught practical nursing on the side and turned over her earnings in order to assist with her husband's tuition at graduate school; that her husband did not give her sufficient money or permit her

---

[1] There was an additional church ceremony on October 17, 1953, in Mt. Union, Pennsylvania.

to drive the car; that she finally refused to turn over her pay check, which caused a violent argument; that her husband struck her severely; that her nose was bleeding and her lip swollen; that he held a knife to her neck and threatened to slit her throat; that a neighbor heard her screams and came in and took the knife away; that, as soon as the neighbor left, her husband stated that he would end it all for both of them; that he threatened to shoot her; that he grabbed her neck and commenced to choke her; that she escaped by hitting her husband with an umbrella, left the apartment and did not return. As was the Master and the court below, we were favorably impressed with the "trustworthiness and truthfulness" of the wife's testimony.

So far as the appellant is concerned, our feeling is one of sympathy, not only for the wife, but also for the Master. The husband was a difficult witness and his testimony was not indicative of an equable temperment. He sat with his feet on the Master's furniture, interjected offensive side remarks, used profanity, actually became violent, and his attorney was unable to quiet him. So far as we have been able to ascertain, other than a protracted denial, his defense was that his wife saw too much of a male anesthesiologist, who was her superior at the hospital. The record discloses no impropriety in this connection. The husband admitted that, at the time of the final argument, he struck his wife and tried to push her down the stairs. The two witnesses he produced contributed nothing of material value to the case. It clearly appears that the husband's main reason for belatedly contesting the divorce action was animosity toward his wife's brother, an attorney from Washington, D. C., who was acting as associate counsel for his sister.[2] In the words of the

[2] It was stated for the record by his attorney that "part of the defendant's anger and anxiety in this case is . . . because plaintiff's

court below, "there are convincing circumstances warranting a disregard of defendant's contradictory testimony".

This appeal does not involve any unusual legal principles. The question before us, as stated by appellant's present counsel, is as follows: "Is the uncorroborated testimony of the plaintiff in a divorce action, where that testimony has been denied and contradicted by the defendant and his witnesses, insufficient upon which to issue a final decree?"

To render applicable the rule that a divorce will not be granted upon plaintiff's uncorroborated testimony, it must appear that the plaintiff's testimony was not only contradicted but shaken by the defendant: *Hansell v. Hansell*, 182 Pa. Superior Ct. 158, 126 A. 2d 509. As we reiterated in the *Hansell* case, where the Master's finding of credibility is not at variance with the record, it must be given the fullest consideration on appeal. See also *Davidson v. Davidson*, 191 Pa. Superior Ct. 305, 156 A. 2d 549; *Pore v. Pore*, 189 Pa. Superior Ct. 615, 151 A. 2d 605; *D'Alessandro v. D'Alessandro*, 187 Pa. Superior Ct. 194, 144 A. 2d 445; *Miln v. Miln*, 175 Pa. Superior Ct. 613, 106 A. 2d 862. The controlling principle is aptly treated in Freedman, Law of Marriage and Divorce, Second Edition, Section 758, as follows: "A rule of frequent application has been formulated that 'a decree may be supported by the testimony of the complainant alone, but if this testimony be contradicted and shaken by the respondent and there be no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out'. This rule has at times been applied as if it were a rigid and absolute formula. Such an application of

counsel is also her brother". Appellant himself testified: "Let me state, you see, this is between John and me—this is more an issue between John and me and not so much on the divorce".

the rule would make the defendant's contradiction an unfailing neutralization of every plaintiff's uncorroborated case. Manifestly, however, the ultimate decision must rest upon the credibility of the parties. Since the plaintiff is a competent witness a decree may be founded upon his testimony alone even if it is uncorroborated and although it may be contradicted by the defendant. The formulated doctrine may remain unbroken if recognition is given to the truth that a plaintiff's evidence may find corroboration in the very testimony of the defendant which is offered as contradiction". Such indeed is the situation in the case at bar, which provides an excellent illustration of the maxim that the record speaks for itself.

In brief, having performed our function on this appeal, we are of the opinion that the Master properly recommended the granting of a divorce, and that the court below did not err in approving the Master's report and entering a final decree. Cf. *Schware v. Schware,* 192 Pa. Superior Ct. 166, 159 A. 2d 568; *Giuffre v. Giuffre,* 187 Pa. Superior Ct. 154, 144 A. 2d 477; *Wieber v. Wieber,* 175 Pa. Superior Ct. 533, 106 A. 2d 854.

Decree affirmed.