## Heyme *v.* Heyme, Appellant.

Argued March 21, 1961. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Elwood M. Malos,* with him *Charles D. Hogan,* for appellant.

*Nathan L. Reibman,* for appellee.

OPINION BY FLOOD, J., June 15, 1961:

The plaintiff husband obtained a decree of divorce from his wife upon the ground of indignities to the person. The master and the court below found that the defendant refused the plaintiff companionship or social life of any kind, and used profane and abusive language toward him.

The wife argues that her refusal to give him companionship or to observe the social amenities are not sufficient to constitute indignities and that the name-

calling must not be provoked by the plaintiff. She also points out that some of the plaintiff's isolation in his own home was of his own choosing since he wanted to have his own bedroom, to go there and read when he wanted to and to take care of it himself.

However, she admitted she had no affection for the plaintiff. She did not deny that she had not slept with him for some years. There was no doubt that their communication during the last years they lived together was largely by means of notes, nor was there any substantial denial that she was the one who stopped talking. Her witnesses' testimony consisted chiefly in saying they never heard her swear at him, but the defendant herself did not deny that she called him the very offensive names that he testified to (N.T. 33). Nor did she testify to any substantial provocation by him.

He testified that she stopped talking to him from 1957 (up to September 1959) and that she said: "There's nothing to talk about—we have absolutely nothing in common". That it was her wish not to talk appears from her answer to his note on the back of plaintiff's Exhibit 6 and from plaintiff's Exhibit 3 where she wrote: "Anything you have to say, write it down". She did not deny these writings.

While he said he always washed his own clothes, a habit he acquired in the Navy, he complained that she did not otherwise take care of him. She prepared only one meal a day, didn't eat with him and didn't come near him when he was in his room with a fever of 104° and at a later date when he had a hemorrhage. He said he was always alone—"on Christmas, New Year, Thanksgiving, her birthday".

They had many arguments but these were mostly about money, "continual little things" and occasionally over roomers in the house whose noises annoyed him. The arguments alone do not help plaintiff's case.

However, the defendant's refusal over two years to talk with her husband except perhaps on rare occasions, her failure to visit him in his room when he was ill and calling him very foul names constitute indignities. Instead of flatly denying these charges she testified about them evasively. The evidence justifies the findings of the master and the court below on these matters.

We agree with Judge PALMER's conclusion that the plaintiff was subjected to a course of conduct constituting indignities and entitling him to a divorce. While the plaintiff called no witnesses to corroborate his charges, his wife's failure to clearly deny the major complaints justifies the decree. *Hanna v. Hanna,* 195 Pa. Superior Ct. 309, 171 A. 2d 646 (1961). "The offense of indignities to the person 'is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement' ". *Sims v. Sims,* 188 Pa. Superior Ct. 439, 445, 149 A. 2d 528, 531 (1959).

Decree affirmed.