Worobey *v.* Worobey, Appellant.

42

Argued March 19, 1963. Before Rhodes, P. J., Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ.

*Francis J. Pfizenmayer*, with him *John A. M. McCarthy*, for appellant.

*Sidney M. DeAngelis*, for appellee.

Opinion by Montgomery, J., April 18, 1963:

This is an appeal from a final decree in divorce a.v.m. granted the husband-appellee on the grounds of indignities to the person. The complaint was filed on December 8, 1961, and was served on the appellant by registered mail as prescribed by the Rules of Civil Procedure, and on January 22, 1962, the court appointed a master. The master notified the appellant that he would hold a hearing on March 6, 1962 at 2:00 P.M. Appellant did not file an answer to the complaint, nor did she appear at the master's hearing.

Previously, on January 5, 1962, a lawyer for the appellant wrote to counsel for the husband and made a demand for a property settlement, threatening to contest the husband's action if the property demanded was not forthcoming.

Negotiations were then entered into between counsel for the husband and counsel for the appellant, and the day before the scheduled master's hearing a meeting was held which resulted in a property settlement, dictated by both counsel to a secretary, transcribed and executed that day. Inter alia, it provided for the payment of $1,500 to the appellant.

On March 22, 1962, the master filed his report recommending that the divorce be granted. On March 29, 1962, a warrant of attorney, together with an entry of appearance was filed by new counsel for the appellant. On the same day appellant filed a petition and rule to show cause why the matter should not be referred back to the master for further testimony in order to permit the appellant to present a defense to the action. The appellant affirmed in her petition that she did not realize the importance and finality of the master's hearing. The appellee alleges that the appellant's only motivation for contesting the divorce was an attempt to obtain a better financial settlement than the one agreed upon previously.

A rule to show cause issued on the husband, who answered the petition and filed new matter alleging the aforesaid motivation of the appellant. On June 11, 1962, the Common Pleas Court of Montgomery County, sitting en banc, dismissed the petition to refer the case back to the master, and granted leave to the appellant to file exceptions to the master's report. The exceptions filed challenged the sufficiency of the evidence to sustain a divorce but did not attack any of the master's findings of fact. The lower court dismissed the excep-

tions, and finding the evidence sufficient entered the decree in divorce a.v.m.

The appellant contends that it was reversible error for the lower court to issue the final decree in divorce based upon the ex parte testimony of the husband when the wife was ready and willing to present a defense.

.We can find no merit in this contention since at no time, either before or after the filing of her warrant of attorney, did the wife file an answer to the complaint. Her motivation in contesting is clearly shown in the record to be an attempt to obtain a more favorable financial settlement. When such improper motive is apparent, dilatory tactics resulting in the prolonging of litigation will not be countenanced. *Fletcher v. Fletcher*, 74 P.L.J. 135; 27A C.J.S. Divorce §171; 17 Am. Jur. Divorce and Separation §493. The appellant was duly served with the complaint. She had sufficient and timely notice of the master's hearing. She therefore was given every opportunity to present her defense. We can find no error in the lower court's refusal to grant the appellant's petition to refer the matter back to the master or in its dismissal of the appellant's exceptions to the master's report.

The appellant further contends that the evidence was insufficient to sustain the recommendation of the master or the subsequent decree granting the divorce by the lower court.

The facts in this case as found by the master and upon which he based his recommendation are the following: The husband-appellee, a native of Poland, is forty years of age. He is employed as a virologist and chemist by Wyeth Institute, Radnor, Pennsylvania. The wife-appellant is thirty-eight years of age. The parties were married February 14, 1954. Immediately thereafter, at the insistence of the defendant, they lived at the home of the appellant's parents in Norwich, Connecticut. In July, 1958, plaintiff came to his present

job and, after much persuasion, induced the defendant to come to Philadelphia for the purpose of finding an apartment. Instead of apartment hunting the appellant went to Atlantic City for the week end, and on the following Monday, after appellee went to work, the appellant took the keys of the house where the parties were staying and returned to Connecticut without any notice to the appellee.

On October 5, 1958, appellant returned to Philadelphia and the parties moved into an apartment in Upper Darby. Thereafter, the appellant constantly complained and expressed continuous dissatisfaction with living in the Philadelphia area.

On October 23, 1958, she left to celebrate her birthday with her parents in Connecticut and did not return until after Thanksgiving Day. After two weeks she returned to Connecticut to celebrate the birthday of their seven year old son and did not come home until January 13, 1959. She again went to Connecticut to celebrate her wedding anniversary on February 14, returned in March and left again in May, staying until July.

Appellant never prepared proper meals for the appellee and their son. She never bathed or dressed the boy. She continuously neglected to do any housework and the appellee was obliged to do all these things himself.

After the son entered school in September, 1960, and appellant was no longer able to visit her parents with her accustomed frequency, her attitude toward the appellee became more hostile. On one occasion she threatened his life while brandishing a knife. Several times she scratched him severely. She told him she did not love him and did not want to be his wife. She ridiculed his earnings. After appellee had purchased a new home for his family, appellant constantly com-

plained about it and repeatedly said she wanted to move back to Connecticut.

Throughout all this time and since the birth of the son, the appellant constantly refused to have sexual relations with the appellee.

On October 29, 1961, appellant told appellee that she wanted a divorce. Two days later she permanently left the appellee, taking their son, most of her belongings, the parties' bank books and all the money in the house.

What constitutes indignities to the person cannot be stated with exactness and each case is dependent upon its singular factual situation, but, generally, indignities consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and any other plain manifestation of hate and estrangement. *Rhinehart v. Rhinehart,* 197 Pa. Superior Ct. 558, 180 A. 2d 82; *Rosenblatt v. Rosenblatt,* 186 Pa. Superior Ct. 503, 142 A. 2d 390.

These facts clearly manifest the kind of continuous and persistent conduct on the part of the wife which demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement. *D'Alessandro v. D'Alessandro,* 187 Pa. Superior Ct. 194, 144 A. 2d 445. Her conduct throughout the course of the marriage demonstrates a settled hatred, and her actions and studied neglect were clearly such as to render the life of the husband burdensome and his condition intolerable. Several of the actions of the appellant, even if considered apart from the overall picture, have specifically been declared to be indignities. Threat of bodily harm is an indignity. *Blum v. Blum,* 140 Pa. Superior Ct. 72, 13 A. 2d 118. Vituperation and name calling is an indignity. *Nedwidek v. Nedwidek,* 172 Pa. Superior Ct. 252, 93 A. 2d 871. Intentional inefficient house-

keeping is an indignity. *Matovcik v. Matovcik,* 173 Pa. Superior Ct. 267, 98 A. 2d 238. Although constant nagging is not of itself a ground for divorce on a charge of indignities, *Magyar v. Magyar,* 148 Pa. Superior Ct. 187, 24 A. 2d 715, nor do the appellant's habitual absences from home and subsequent desertion of themselves amount to indignities, *Hughes v. Hughes,* 196 Pa. Superior Ct. 144, 173 A. 2d 700, they are certainly manifestations of settled hate and estrangement. The sufficiency of the evidence in this case is unquestionable even though said evidence consists exclusively of the uncorroborated testimony of the injured spouse. *Hanna v. Hanna,* 195 Pa. Superior Ct. 309, 171 A. 2d 646; *Lombard v. Lombard,* 194 Pa. Superior Ct. 162, 166 A. 2d 98. The master's findings of fact based upon this testimony, which remains uncontradicted on the record, conclusively establishes adequate grounds for the granting of the divorce.

Decree affirmed.

---

DISSENTING OPINION BY FLOOD, J.:

In this case the testimony of the husband was taken at the master's hearing on March 16, 1962. The master filed his report recommending a divorce on March 22. The wife then retained counsel who on March 29 filed his warrant of attorney and a petition seeking to have the cause referred back to the master in order to permit the wife to present a defense. The court dismissed her petition because she failed to show any justification or excuse for failing to present her defense at the time of the master's hearing.

In view of the State's interest in the preservation of the marriage relation, in my opinion the court should grant such a petition, presented within a week after the filing of the master's report and within two weeks of the hearing, and allow the defendant to present testimony controverting that of the plaintiff. If there is

great delay in presenting a petition for reference back, coupled with failure of any valid excuse, the court is justified in dismissing the petition. However, when the petition is presented promptly no harm can be done by allowing a rehearing even if no valid excuse is alleged for the wife's neglect to appear at the earlier hearing. The interest of the State would be served by allowing the wife to present her testimony and no substantial prejudice would result to the interest of a plaintiff with a good cause of action.

WRIGHT, J., joins in this dissent.